**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316206)
Adam C. McCall (SBN 302130)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: (415) 373-1671
Facsimile:  (415) 484-1294
Email: aapton@zlk.com
          amccall@zlk.com

*Attorneys for Lead Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INCHEN HUANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSERTIO THERAPEUTICS, INC., ARTHUR JOSEPH HIGGINS, JAMES A. SCHOENECK, and AUGUST J. MORETTI,<br><br>Defendants. | Case No. 4:17-cv-04830-JST<br><br>**CLASS ACTION**<br><br>**PLAINTIFFS' NOTICE OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:   October 7, 2021<br>Time:              2:00pm<br>Location:         Courtroom 6 – 2nd Floor<br>Judge:             Honorable Jon S. Tigar |

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT ..................................................................... 1

II.    SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY ..................... 2

III.   THE SETTLEMENT ................................................................................. 3

    A.    The Settlement Terms ................................................................. 3

    B.    The Plan of Allocation ................................................................ 5

IV.    THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL ......................... 5

    A.    Standards for Preliminary Approval ............................................. 5

    B.    The Settlement is Fair, Reasonable, and Adequate ........................ 7

        1.   The Settlement is the Product of Arms'-Length Negotiations Between Experienced Counsel Mediated By a Respected and Experienced Mediator .......................................................... 7

        2.   The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation ........... 7

        3.   Risk of Maintaining Class Action Status Throughout Trial ...... 9

        4.   The Amount Offered in Settlement ..................................... 9

        5.   The Extent of Discovery and the Stage of Proceedings ......... 10

        6.   The Proposed Settlement Does Not Unjustly Favor any Settlement Class Members, Including Plaintiffs .................. 11

        7.   The Recommendations of Experienced Counsel .................. 11

V.     THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES ......................................................................................... 12

    A.    The Settlement Class Is Sufficiently Numerous to Warrant Certification ......... 13

    B.    There Are Substantial Common Questions of Law and Fact ............. 13

    C.    Plaintiffs' Claims Are Typical of Other Settlement Class Members ... 14

    D.    Plaintiffs and Lead Counsel Adequately Represent the Settlement Class ......... 14

    E.    The Predominance and Superiority Requirements Are Satisfied ....... 14

VI.    THE PLAN OF ALLOCATION IS FAIR AND REASONABLE ......................... 15

VII.   THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA ......................................................................................... 16

    A.    The Method of Notice is Adequate ................................................ 16

        B.       The Content of the Notice Is Adequate ...................................................... 17

VIII.  THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFF'S EXPENSES ......................................................... 19

IX.    THE PROPOSED CLAIMS ADMINISTRATOR ......................................................... 20

X.     PROPOSED SCHEDULE OF EVENTS .................................................................... 21

XI.    CONCLUSION ............................................................................................................ 21

1

## **TABLE OF AUTHORITIES**

2

3

**Cases**

4

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007) ................................................................. 6

5

6

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ................................................................. 12, 15

7

*Barani v. Wells Fargo Bank, N.A.*,
   2014 WL 1389329 (S.D. Cal. Apr. 9, 2014) .............................................. 17

8

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) ................................................................. 12

9

10

*Booth v. Strategic Realty Tr., Inc.*,
   2015 WL 3957746 (N.D. Cal. June 28, 2015) .............................................. 5

11

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................... 8, 18

12

13

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ................................................................. 15

14

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................ 6, 12, 13

15

16

*Hefler v. Wells Fargo & Co.*,
   2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ................................ 6, 9, 11

17

*Hodges v. Akeena Solar, Inc.*,
   274 F.R.D. 259 (N.D. Cal. 2011) ................................................................. 13

18

19

*In re Adobe Sys., Inc. Sec. Litig.*,
   139 F.R.D. 150 (N.D. Cal. 1991) ................................................................. 13

20

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) ................................................................. 17

21

22

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ................................................................. 5

23

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................. 17

24

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
   2015 WL 224631 (S.D. Cal. Jan. 15, 2015) .............................................. 14

25

26

*In re Cooper Cos. Sec. Litig.*,
   254 F.R.D. 628 (C.D. Cal. 2009) ................................................................. 13

27

*In re Diamond Foods, Inc.*,
   295 F.R.D. 240 (N.D. Cal. 2013) ................................................................. 14

28

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005)................................................................. 20

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000)................................................................................ 6, 7, 19

*In re Mut. Funds Inv. Litig.*,
  2010 WL 2342413 (D. Md. May 19, 2010) ...................................................................... 17

*In re Netflix Privacy Litig.*,
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) .................................................................. 7

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ................................................................... 11, 19

*In re Pacific Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995)............................................................................................ 20

*In re Rent-Way Sec. Litig.*,
  305 F. Supp. 2d 491 (W.D. Pa. 2003) .............................................................................. 9

*In re Syncor ERISA Litig.*,
  516 F.3d 1095 (9th Cir. 2008)......................................................................................... 5

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................................... 6, 9

*In re Tyco Int'l, Ltd.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ................................................................................. 8

*In re Verisign, Inc. Sec. Litig.*,
  2005 WL 7877645 (N.D. Cal. Jan. 13, 2005) ................................................................. 13

*In re Wireless Facilities, Inc. Sec. Litig. II*,
  253 F.R.D. 607 (S.D. Cal. 2008)...................................................................................... 8

*In re Zynga Inc. Sec. Litig.*,
  2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................................................. 16

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
  WL 6248426 (N.D. Cal. Oct. 25, 2016) .......................................................................... 10

*Jaffe v. Morgan Stanley & Co., Inc.*,
  2008 WL 346417 (N.D. Cal. Feb. 7, 2008)..................................................................... 12

*Johnson v. US Auto Parts Network, Inc.*,
  2008 WL 11343481 (C.D. Cal. Oct. 9, 2008) ................................................................... 7

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982)........................................................................... 5, 7, 9, 10

*Persky v. Turley*,
  1991 WL 329564 (D. Ariz. Dec. 20, 1991)..................................................................... 15

*Rodriquez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) ............................................................................................... 7

*Romero v. Producers Dairy Foods, Inc.*,
    2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) .................................................................... 20

*Rosenburg v. Int'l Bus. Mach. Corp.*,
    2007 WL 128232 (N.D. Cal. Jan. 11, 2007) ................................................................ 6, 15

*Satchell v. Fed. Express Corp.*,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) ..................................................................... 7

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ...................................................................................... 13, 19

*Stewart v. Applied Materials, Inc.*,
    2017 WL 3670711 (N.D. Cal. Aug. 25, 2017) ................................................................... 11

*Stratton v. Glacier Ins. Adm'rs, Inc.*,
    2007 WL 274423 (E.D. Cal. Jan. 29, 2007) ...................................................................... 18

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ....................................................................................... 6

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ..................................................................................... 12, 13

**Statutes**

15 U.S.C. § 78u-4(a)(7) ................................................................................................................. 18

15 U.S.C. §78a ................................................................................................................................. 2

28 U.S.C. §1715 ............................................................................................................................. 17

**Other Authorities**

Janeen McIntosh and Svetlana Starykh,
    *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25,
    2021) ................................................................................................................................... 10

Newberg on Class Actions § 14.6 (4th ed. 2007) ......................................................................... 20

Newberg on Class Actions § 13:52 (2014) (5th ed.) ....................................................................... 6

**Rules**

Fed. R. Civ. P. 23(a) ......................................................................................................... 12, 13, 14

Fed. R. Civ. P. 23(b) ............................................................................................................... 12, 14

Fed. R. Civ. P. 23(c) ............................................................................................................... 17, 18

Fed. R. Civ. P. 23(e) ................................................................................................................. 5, 16

## NOTICE OF UNOPPOSED MOTION
## <u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 7, 2021, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiffs Aurelio Scarpatetti, Manuele Scarpatetti, Mark Madrack and Duy Vu (collectively, "Plaintiffs") will and hereby move the Honorable Jon S. Tigar, District Judge, located in Courtroom 6 – 2nd Floor, 1301 Clay Street, Oakland, CA 94612, for entry of the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") submitted herewith, which: (i) grants preliminary approval of the proposed class action settlement on the terms set forth in the Stipulation of Settlement and exhibits thereto, dated as of July 30, 2021 (collectively the "Stipulation");[1] (ii) preliminarily certifies the Settlement Class, appointing Plaintiffs as class representatives of the Settlement Class, and appointing Lead Counsel as class counsel for the Settlement Class[2]; (iii) approves the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (iv) sets a hearing date to determine whether the proposed Settlement, proposed Plan of Allocation, and Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses, should be approved.

In support of this Motion, Plaintiffs submit the following memorandum, the Apton Declaration and exhibits thereto, including the Stipulation and further exhibits thereto, all prior pleadings and papers in this Action; and such additional information or argument as may be required by the Court.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation. A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Adam M. Apton in Support of Preliminary Approval of Settlement (the "Apton Declaration"). Unless otherwise noted, all citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Apton Declaration.

[2] As explained in the Stipulation, Defendants are "[s]olely for purposes of the Settlement and for no other purpose" stipulating to: (1) certification of the Action as a class action; (2) certification of Plaintiffs as Class Representatives; and (3) appointment of Lead Counsel as Class Counsel. *See, e.g.*, Stipulation, ¶ 2.

**STATEMENT OF ISSUES TO BE DECIDED**

1.   Whether the proposed $1,000,000 million cash settlement of this Action is within the range of fairness, reasonableness, and adequacy to warrant the Court's preliminary approval and the dissemination of notice of its terms to members of the proposed Settlement Class.

2.   Whether the Settlement Class should be certified for purposes of the Settlement.

3.   Whether Plaintiffs should be certified as Class Representatives of the Settlement Class for purposes of the Settlement.

4.   Whether Lead Counsel should be appointed Class Counsel for the Settlement Class for purposes of the Settlement.

5.   Whether the proposed Settlement Notice and Proof of Claim and Release Form and the manner for dissemination of the Notice and Proof of Claim to the Settlement Class should be approved.

6.   Whether the Court should set a date for a hearing for final approval of the proposed Settlement, the proposed Plan of Allocation, and the application of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants in exchange for Defendants' cash payment of $1,000,000 million (the "Settlement Amount").  Plaintiffs now respectfully submit this memorandum in support of their unopposed motion for entry of the Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith.

The proposed Settlement of $1,000,000 million is an excellent result for the Settlement Class given the procedural posture of this case, and it did not come easily.  The Settlement was reached after more than a three years of hotly contested litigation, which included: (i) a comprehensive investigation by Lead Counsel prior to filing the Class Action Complaint for Violations of the Federal Securities Laws (the "First Amended Complaint" or "FAC"); (ii) fully briefing the motions to dismiss the FAC filed by Defendants; (iii) preparing for and arguing the motion to dismiss; (iv) investigating, researching, and filing a subsequent amended complaint in light of the Court's motion to dismiss order (the "Second Amended Complaint" or "SAC"); (v) fully briefing the motion to dismiss the SAC filed by Defendants; (vi) preparing for and arguing the motion to dismiss; (vii) investigating, researching and filing a Notice of Appeal in the United States Court of Appeals for the Ninth Circuit in light of the Court's motion to dismiss order; and (viii) fully briefing the issues on appeal.  Plaintiffs were highly involved at each phase of the litigation, including reviewing the complaints and briefing and evaluating the benefits versus risks of continuing with this Action on behalf of the Settlement Class.

In an effort to resolve this Action and as part of the appeals process, the Parties participated in the Mediation Program of the Ninth Circuit Court of Appeals with Circuit Mediator Jonathan Westen. While the mediation efforts were initially unsuccessful, the Parties continued to negotiate in good faith and came to an agreement in principle on February 26, 2021.

Thus, the $1 million Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of an experienced mediator, and with sufficient information to evaluate the sufficiency of the Settlement in light of the risks and uncertainties of continued

litigation.  As set forth herein, the Settlement warrants preliminary approval by this Court so that Notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

**II.      SUMMARY OF THE LITIGATION AND PROCEDURAL HISTORY**

Plaintiffs assert claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act") against Depomed, and the Individual Defendants.  Depomed traded on the NASDAQ under the ticker symbol "DEPO" during the Class Period.

On August 18, 2017, a class action complaint was filed in the United States District Court for the Northern District of California.  ECF No.1.  On December 8, 2017, the Court issued an Order (1) appointing Depomed Investor Group as Lead Plaintiffs for the Action; and (2) approving Plaintiffs' selection of Levi & Korsinsky, LLP as Lead Counsel for the proposed plaintiff class. ECF No. 52.

On February 6, 2018, Lead Plaintiffs filed and served the FAC.  ECF No. 61.  Among other things, the FAC alleged that Defendants violated the Securities Exchange Act, 15 U.S.C. §78a, *et seq*. On April 9, 2018, Defendants filed and served a motion to dismiss the FAC.  ECF No. 66.  On June 8, 2018, Plaintiffs served their papers in opposition and, on July 23, 2018, Defendants served their reply papers.  ECF Nos. 68, 70.

On December 13, 2018, the Court heard oral argument on Defendants' motions to dismiss. ECF No. 77.  On March 18, 2019, the Court entered an Order granting Defendants' motions to dismiss with leave to amend.  ECF No. 83.

On May 2, 2019, Lead Plaintiffs filed and served the SAC.  ECF No. 87.  Among other things, the SAC alleged that Defendants violated the Securities Exchange Act, 15 U.S.C. §78a, *et seq*. On June 17, 2019, Defendants filed and served a motion to dismiss the SAC.  ECF No. 92.  On August 1, 2019, Plaintiffs served their papers in opposition and, on August 30, 2019, Defendants served their reply papers.  ECF Nos. 94, 96.

On December 18, 2019, the Court heard oral argument on Defendants' motions to dismiss. ECF No. 105.  On March 11, 2020, the Court entered an Order granting Defendants' motions to

1    dismiss without leave to amend.  ECF No. 110.

2        On April 9, 2020, Plaintiffs timely filed a Notice of Appeal which was assigned to the United

3    States Court of Appeals for the Ninth Circuit, styled *Aurelio Scarpatetti, et al v. Assertio*

4    *Therapeutics, Inc., et al.*, Case No. 20-15707. ECF Nos. 112-113.

5        As part of the appeals process, Plaintiffs and Defendants participated in the Mediation

6    Program of the Ninth Circuit Court of Appeals with Circuit Mediator Jonathan Westen. This

7    included multiple calls with the mediator and the exchange of settlement offers. These mediation

8    efforts were initially unsuccessful.

9        On September 23, 2020, Plaintiffs filed their opening brief in the United States Court of

10   Appeals for the Ninth Circuit. *Aurelio Scarpatetti, et al v. Assertio Therapeutics, Inc., et al.*, Case

11   No. 20-15707 ECF No. 22. On October 23, 2020, Defendants filed their answering brief. *Id.* ECF.

12   No. 30. On December 14, 2020, Plaintiffs filed their Reply Brief. *Id.* ECF No. 36.

13       Oral Argument was initially scheduled for March 5, 2021 but on February 26, 2021,

14   Plaintiffs and Defendants came to an agreement in principle to settle and release all claims asserted

15   against Defendants in the Action in return for a cash payment by Depomed of $1,000,000 for the

16   benefit of the Settlement Class, subject to certain terms and conditions and the execution of a

17   customary "long form" stipulation and agreement of settlement and related papers. Accordingly,

18   Plaintiffs and Defendants filed a Joint Motion to stay the appellate proceedings stating that they

19   were engaged in advanced settlement negotiations and believed that the relief sought herein would

20   facilitate settlement.

21       Plaintiffs and Defendants continued to negotiate the terms of the Settlement and entered

22   into the Stipulation of Settlement on July 30, 2021.

23   **III.    THE SETTLEMENT**

24       **A.    The Settlement Terms**

25       The Settlement provides that Depomed will pay or cause to be paid $1 million in cash into

26   an interest-bearing escrow account for the Settlement Class.  The Settlement Amount, plus accrued

27   interest, and after deduction of (i) any Taxes, (ii) Notice and Administration Costs, and (iii) any

28   Court-awarded attorneys' fees and Litigation Expenses is the "Net Settlement Fund."  The Net

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 4:17-CV-04830-JST                                                                3

1   Settlement Fund will be distributed among Settlement Class Members who submit valid Claim

2   Forms ("Authorized Claimants"), in accordance with the proposed Plan of Allocation.

3        The Settlement Class is defined as: "all persons who purchased or otherwise acquired

4   common shares of Depomed from July 29, 2015 to August 7, 2017, inclusive. Excluded from the

5   Settlement Class are Defendants and their respective successors and assigns; past and current

6   executive officers and directors of Depomed, Inc. n/k/a Assertio Therapeutics Inc.; members of the

7   Immediate Families of the Individual Defendants; the legal representatives, heirs, successors or

8   assigns of the Individual Defendants; any entity in which any of the above excluded persons have

9   or had a majority interest; and any person who validly requests exclusion from the Settlement

10  Class."  Stipulation, ¶1(oo).

11       In exchange for the Settlement Amount, Settlement Class Members will release the

12  "Released Plaintiffs' Claims," which include "any and all claims, including Unknown Claims, that

13  have been or could have been asserted by or on behalf of any of Plaintiffs' Releasees, in any

14  capacity, arising out of, based upon, relating indirectly or directly to, or in connection with

15  the purchase, sale, acquisition, disposition, or holding of Depomed common shares purchased

16  or otherwise acquired from July 29, 2015 to August 7, 2017, inclusive, and the transactions,

17  facts, events, matters, occurrences, acts, disclosures, statements, representations,

18  misrepresentations or omissions involved, set forth, referred to, or otherwise related, directly

19  or indirectly, to the allegations that were or could have been alleged in this Action or the

20  disclosures made in connection therewith (including the adequacy and completeness or such

21  disclosures). Released Plaintiffs' Claims do not include: (i) any claims relating to the

22  enforcement of the Settlement; and (ii) any claims of any person or entity who or which submits

23  a valid and timely request for exclusion that is accepted by the Court.  For avoidance of doubt, the

24  definition of "Released Plaintiffs' Claims" does not include claims in any shareholder derivative

25  action.."  Stipulation, ¶1(jj).  The scope of this release is reasonable as it is limited to claims that

26  relate to the purchase of Depomed common shares and that relate to the same factual allegations

27  that were or could have been set forth in the complaints filed in this Action.  *Id.*  While this release

28  includes unknown claims and other claims that "could have been asserted" in this Action, the release

of such claims is appropriate.  *See, e.g.*, *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (noting that courts in this District approve releases with similar language, and approving release similar to the released claims here).  The Settlement does not release any claims to enforce the Settlement, or claims of any Person that excludes himself, herself, or itself from the proposed Settlement Class.  Stipulation, ¶1(jj).

### B. The Plan of Allocation

The proposed Plan of Allocation, set forth in the Notice, is comparable to plans of allocation approved in numerous other securities class actions.  The Plan of Allocation allocates the Net Settlement Fund among Settlement Class Members who submit valid Claims Forms (or whose Claim Form is otherwise accepted by the Court) on a *pro rata* basis based on the amount of each Claimant's Recognized Claim.  The formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the Securities Act, and takes into consideration when each Claimant purchased and/or sold common shares of Depomed.  *See* Notice Ex. A-1, *See also* ¶¶23-26 (Apton Decl.).

## IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

### A. Standards for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving complex class actions.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) ("there is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("voluntary conciliation and settlement are the preferred means of dispute resolution").

Rule 23(e) requires court approval for any settlement of a class action.  Such approval involves a two-step process by which the Court first determines whether a proposed settlement deserves preliminary approval, and then, after notice is given to class members, whether final approval is warranted.  Rule 23(e); *see, e.g.*, *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *2 (E.D. Cal. June 13, 2006).  "The Court's task at the preliminary approval stage is to determine whether the settlement falls 'within the range of possible approval.'"  *Booth v. Strategic Realty Tr., Inc.*, 2015 WL 3957746, at *6 (N.D. Cal. June 28, 2015) (quotation omitted); *see also Rosenburg v.*

*Int'l Bus. Mach. Corp.*, 2007 WL 128232, at \*5 (N.D. Cal. Jan. 11, 2007) (preliminary approval granted where "[s]ettlement has no obvious defects and is within the ranges of possible Settlement approval such that notice to the Class is appropriate").   The Court's function in preliminarily reviewing a settlement is to determine whether the proposed settlement is fundamentally fair, adequate, and reasonable, and not to "delete, modify or substitute" provisions within a settlement agreement.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).

   "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at \*8 (N.D. Cal. Sept. 4, 2018) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)).  In granting preliminary approval of a settlement and ordering notice, the Court only needs to determine that the settlement is "*potentially* fair, as the Court will make a final determination of its adequacy at the hearing on Final Approval, after such time as any party has had a chance to object and/or opt out."  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis in original).  "The proposed settlement need not be ideal, but it must be fair and free of collusion, consistent with counsel's fiduciary obligations to the class."  *Hefler*, 2018 WL 4207245, at \*8.

   The Court must consider the following factors when determining whether a settlement should be preliminarily approved: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; and (7) the absence of collusion between the parties.  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000). The Court should be mindful in balancing these considerations here because "[s]ecurities class action litigation is notably difficult and notoriously uncertain."  *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) (internal quotations and citation omitted); *see also* Newberg on Class Actions § 13:52 (2014) (5th ed.) (same); *Johnson v. US Auto Parts Network, Inc.*, 2008

WL 11343481, at *3 (C.D. Cal. Oct. 9, 2008) ("[A] number of courts have commented on the difficulty and uncertainty of maintaining a securities class action.") (collecting cases).

As set forth below, the Settlement meets the criteria for preliminary approval and is well within the range of what might be approved as fair, reasonable, and adequate.

### B.    The Settlement is Fair, Reasonable, and Adequate

#### 1.    The Settlement is the Product of Arms'-Length Negotiations Between Experienced Counsel Mediated By a Respected and Experienced Mediator

In approving a class action settlement, the Ninth Circuit "put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution." *Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also, e.g.*, *In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").  Indeed, "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007).

Lead Counsel engaged in rigorous settlement negotiations with counsel for the Depomed, in an appeals process assisted by Circuit Mediator Jonathan Westen. During the mediation, the participants had full and frank discussions concerning the merits of this Action.  The mediation efforts were initially unsuccessful but Plaintiffs and Defendants continued to negotiate in good faith and came to an agreement in principle on February 26, 2021. Accordingly, the Settlement was a result of an arms-length, non-collusive, negotiated resolution.

#### 2.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *Mego*, 213 F.3d at 458, 459; *Officers for Justice*, 688 F.2d at 625.

The risks to continued litigation in this case were substantial.  In considering the Settlement,

1    Plaintiffs and Lead Counsel weighed the risks inherent in establishing all the elements of the claims,

2    as well as the likely further expense and duration of the Action.  *See Churchill Vill., L.L.C. v. Gen.*

3    *Elec.*, 361 F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of

4    further litigation as factors supporting final approval of settlement).  Here, the risks were extremely

5    real as the Court had already dismissed the FAC and the SAC in their entirety.  ECF Nos. 83, 110.

6    Further, there was a high likelihood that Plaintiffs' appeal would have been unsuccessful, leaving

7    the Class with no recovery. Moreover, even if successful on appeal, there were also substantial risks

8    to success at class certification, summary judgment and trial.

9        Defendants adamantly deny any wrongdoing, and as in their motions to dismiss, were

10   prepared to make a multi-pronged defense against Plaintiffs' claims.  Although Plaintiffs and Lead

11   Counsel believe that this case has substantial merit, they recognize the significant of appeal, and if

12   successful, the cost and risk through a hearing on class certification, completion of fact and expert

13   discovery, summary judgment, trial, and subsequent appeals, as well as the inherent difficulties and

14   delays complex litigation like this entails.  *See, e.g.*, *In re Wireless Facilities, Inc. Sec. Litig. II*, 253

15   F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily approving settlement where "[l]iability remains

16   uncertain" as "it appears to the Court that plaintiffs have a viable claim regarding the alleged

17   securities fraud and Defendants have a viable defense against such claims").   Likewise, the

18   determination of damages, like the determination of liability, is a complicated and uncertain process,

19   involving conflicting expert testimony.  *In re Tyco Int'l, Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H.

20   2007) ("even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle

21   of the experts' over damages.").

22       Continued litigation would be uncertain, complex, costly, and lengthy.  Even assuming that

23   Plaintiffs' appeal was successful—and there was a significant risk that it would fail—depositions

24   would have had to be taken, experts would need to be designated and expert discovery completed,

25   Defendants' expected summary judgment motion(s) would have to be successfully briefed and

26   argued, and trials are innately expensive, risky, and uncertain.  Moreover, any judgment favorable

27   to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong

28   the case for years with the ultimate outcome uncertain.  By contrast, the $1 million Settlement

provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and expense of continued litigation.  An evaluation of the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all settling parties.  Indeed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citation omitted).

### 3. Risk of Maintaining Class Action Status Throughout Trial

At the time the Settlement was reached, Plaintiffs had not yet moved for class certification. While Plaintiffs believe that class certification would be appropriate, there is no guarantee that the Court would have agreed.  Furthermore, Rule 23 provides that a class certification order may be altered or amended any time before a decision on the merits.  Thus, in any class action suit, there is always a risk that a class will be modified or decertified prior to a decision on the merits.  "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement."  *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506-07 (W.D. Pa. 2003).

### 4. The Amount Offered in Settlement

"To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'"  *Hefler*, 2018 WL 4207245, at *9 (quoting *Tableware*, 484 F. Supp. 2d at 1080).  The $1 million Settlement Amount is within the range of reasonableness under the circumstances so as to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.  Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, will be approximately $0.021 per damaged share.  ¶18.

The $1 million recovery represents approximately 0.7% of estimated maximum damages of $136.6 million that is potentially available in this Action under Plaintiffs' best-case scenario, assuming that: (i) Plaintiffs were successful on all aspects of their appeal; (ii) the Court certified the same class period as the Settlement Class Period; (iii) Plaintiffs survived motion(s) for summary judgment on all elements and also convinced a jury that liability was proven; and (iv) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each stock price drop dates alleged in this case.   Of course, less than a complete victory on any aspect of these

1    assumptions would decrease recoverable damages, and each element at issue (including loss
2    causation) was strongly contested by Defendants.

3        Especially in the light of these risks, the percentage of recovery is reasonable and well within
4    the range of other securities class action settlements at this stage of the litigation. *See* Ex. 2 (Janeen
5    McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-*
6    *Year Review* (NERA Jan. 25, 2021) at p. 20, Fig. 16 (median recovery in securities class actions in
7    2020 was approximately 1.7% of estimated damages).  Indeed, "[i]t is well-settled law that a cash
8    settlement amounting to only a fraction of the potential recovery does not per se render the
9    settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

10            **5.    The Extent of Discovery and the Stage of Proceedings**

11        In considering a class action settlement, courts look for indications that the parties carefully
12    investigated the claims before reaching a resolution.  *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg.,*
13    *Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016)
14    (commenting that formal discovery is "not a necessary ticket to the bargaining table where the
15    parties have sufficient information to make an informed decision about settlement").

16        Lead Counsel conducted an extensive investigation of the claims asserted in this Action,
17    including: (i) detailed review and analysis of regulatory filings made by Assertio Therapeutics, Inc.,
18    formerly known as Depomed, Inc. ("Depomed") with the United States Securities and Exchange
19    Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and
20    disseminated by Depomed; (c) information retrieved from government websites; (d) interviews with
21    former employees of Depomed; and (e) review of other publicly available information concerning
22    Depomed. As part of this investigation, Lead Counsel also consulted with a damage expert.  *See*
23    ¶21.

24        In drafting the FAC and SAC, opposing Defendants' motions to dismiss, and participating
25    in the appeals process, Lead Counsel further engaged in extensive legal research, which helped to
26    further evaluate, tweak, and sharpen the understanding of the strengths and weaknesses of the claims
27    asserted in this Action.

28        This significant amount of information helped enable Lead Counsel to make an informed

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT
Case No. 4:17-CV-04830-JST                                                          10

assessment of the strengths and weaknesses of this Action to make a determination on behalf of the Settlement Class about whether to settle.   The settlement negotiations further informed Lead Counsel about the strengths and weaknesses of the potential class's claims in this Action and Defendants' defenses to those claims as well as the fairness of the Settlement.  As a result, the Parties and their counsel have sufficient basis to make informed decisions about the relative merits and weakness of this Action and the Settlement.

### 6.     The Proposed Settlement Does Not Unjustly Favor any Settlement Class Members, Including Plaintiffs

The Settlement does not provide preferential treatment to any Settlement Class Member, segment of the Settlement Class, or to the Plaintiffs.  *Hefler*, 2018 WL 4207245, at *8.  The Plan of Allocation described in the proposed Notice to the Settlement Class provides for distribution of the Net Settlement Fund to Settlement Class Members who have a loss on their transactions in Depomed common shares purchased or otherwise acquired during the Class Period.  *See* Notice, pp. 46-49. The Plan of Allocation is based on when Settlement Class Members purchased, acquired, and/or sold common shares.  This method ensures that Settlement Class Members' recoveries are based upon the relative losses sustained as a result of the wrongdoing alleged in the Action.  Plaintiffs' will receive a distribution from the Net Settlement Fund in accordance with the Plan of Allocation in the same manner as all other Settlement Class Members.

### 7.     The Recommendations of Experienced Counsel

Courts also give weight to the opinion of experienced and informed counsel supporting the settlement.  *See, e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) ("[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness") (quotation omitted); *accord Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017) (same).  Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action.  Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval of the Settlement. Defendants have been vigorously represented by highly sophisticated and experienced counsel throughout the Action and settlement negotiations.  Because the Settlement is the product of serious,

1   informed, and non-collusive negotiations among experienced counsel and a highly qualified

2   mediator, preliminary approval is warranted.

3   **V.      THE COURT SHOULD CERTIFY THE CLASS FOR SETTLEMENT PURPOSES**

4          At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement

5   on behalf of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary

6   approval stage and solely for purpose of the Settlement, whether the certification of the Settlement

7   Class appears to be appropriate.  *Hanlon*, 150 F.3d at 1019; *Jaffe v. Morgan Stanley & Co., Inc.*,

8   2008 WL 346417, at *2 (N.D. Cal. Feb. 7, 2008).  Rule 23(a) sets forth four prerequisites to class

9   certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation.

10  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the

11  court must find that at least one of the three conditions of Rule 23(b) is satisfied.  *Id.*  Under

12  subsection (b)(3), the Court must find that the questions of law or fact common to the members of

13  the class predominate over any questions affecting only individual members and that a class action

14  is superior to other available methods for the fair and efficient adjudication of the controversy.  *Id.*;

15  *Jaffe*, 2008 WL 346417, at *7.

16         The proposed Settlement Class consists of "all persons who purchased or otherwise acquired

17  common shares of Depomed from July 29, 2015 to August 7, 2017, inclusive." Stipulation, ¶1(oo).[3]

18  Plaintiffs believe this Action satisfies all the factors for certification of a class[4] and, if the Action

19  were to proceed toward trial, class certification would be appropriate.  The Ninth Circuit and

20  numerous courts within the Ninth Circuit have held that class actions are generally favored in

21  securities fraud actions.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert.*

22

23  ─────────────────

24  [3] Excluded from the Settlement Class are Defendants and their respective successors and assigns; past and current executive officers and directors of Depomed, Inc. n/k/a Assertio Therapeutics Inc.; members of the Immediate Families of the Individual Defendants; the legal representatives, heirs, successors or assigns of the Individual Defendants; any entity in which any of the above excluded persons have or had a majority interest; and any person who validly requests exclusion from the Settlement Class. *Id.*

25

26

27  [4] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement‑only certification is requested, for the proposal is that there be no trial."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

28

1    *denied*, 429 U.S. 816 (1976).[5]

2    **A.      The Settlement Class Is Sufficiently Numerous to Warrant Certification**

3         Rule 23(a)(1) requires the class to be so large that joinder of all members is impracticable.

4    As of as of August 4, 2017 (the last Form 10-Q of the Class Period), Depomed had 62,988,986

5    outstanding shares of common stock. As such, members of the Settlement Class, number in the

6    thousands (if not millions) and are located throughout the United States.  A group this large and

7    geographically diverse is too unwieldy to join in a single action.  *Hodges v. Akeena Solar, Inc.*, 274

8    F.R.D. 259, 266 (N.D. Cal. 2011).

9    **B.      There Are Substantial Common Questions of Law and Fact**

10        A proposed settlement class has sufficient commonality to justify certification where there

11   are substantial questions of law and fact common to the class.  *See Wolin*, 617 F.3d at 1172.  Rule

12   23(a)(2) should be construed permissibly, such that "[a]ll questions of fact and law need not be

13   common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.  A class has sufficient commonality where

14   there is "[t]he existence of shared legal issues with divergent factual predicates" or "a common core

15   of salient facts coupled with disparate legal remedies within the class."  *Hanlon*, 150 F.3d at 1019;

16   *accord Staton v. Boeing Co.*, 327 F.3d 938, 953 (9th Cir. 2003).

17        Plaintiffs submit that common questions of fact and law in this Action include: (a) whether

18   Defendants violated Sections 10(b) and 20(a) of the Exchange Act; (b) whether Defendants made

19   material misrepresentations to investors regarding Depomed's marketing strategy; (c) whether the

20   alleged false statements were made with scienter; (d) whether Plaintiffs adequately alleged loss

21   causation; and (e) the appropriate measure of damages, if any.  In the context of the Settlement

22   Class, additional common questions include whether the Settlement is fair, reasonable, and

23

24   ---

     [5] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities

25   litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed

26   in a securities fraud context because class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'") (citation omitted); *In re Verisign, Inc. Sec.*

27   *Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively

28   small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

1  adequate; and whether the Settlement should be approved.

2      **C.    Plaintiffs' Claims Are Typical of Other Settlement Class Members**

3      Like other Settlement Class Members, Plaintiffs allege that they purchased Depomed

4  common shares at artificially inflated prices during the Class Period and were damaged upon the

5  revelation of the Defendants' fraud.  The other members of the Settlement Class were allegedly

6  affected in the same way.

7      Similarly, the interest of Plaintiffs in obtaining a fair, reasonable, and adequate settlement

8  of the claims asserted is identical to the interests of the remaining Settlement Class Members.  Under

9  the proposed Plan of Allocation, Plaintiffs will receive the same *pro rata* share of the Settlement

10  Fund as the rest of the Settlement Class.  Accordingly, the typicality requirement is met.  *In re*

11  *Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here,

12  Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class

13  members.  They are, therefore, typical of the class.").

14      **D.    Plaintiffs and Lead Counsel Adequately Represent the Settlement Class**

15      Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the

16  interests of the class."  "The two key inquiries are (1) whether there are conflicts within the class;

17  and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class.  The adequacy

18  inquiry also 'factors in competency and conflicts of class counsel.'"  *In re Diamond Foods, Inc.*,

19  295 F.R.D. 240, 252 (N.D. Cal. 2013).

20      Plaintiffs have prosecuted this Action, negotiated with Defendants through counsel, and

21  approved the Settlement for the benefit of all Settlement Class Members.  Moreover, Plaintiffs have

22  represented by qualified counsel with extensive experience in the prosecution of securities class

23  actions.  Thus, Plaintiffs and Lead Counsel respectfully submit that the requirements of Rule

24  23(a)(4) are met.

25      **E.    The Predominance and Superiority Requirements Are Satisfied**

26      Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law

27  or fact predominate over individual questions, and that a class action is superior to other available

28  methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement

1   Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or

2   fact common to the members of the Settlement Class predominate over any questions affecting

3   individual members.  Moreover, damages suffered by members of the Settlement Class are not

4   sufficient to make it economical to prosecute separate actions in order to recover individual losses

5   sustained as a result of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521

6   U.S. at 617 ("The policy at the very core of the class action mechanism is to overcome the problem

7   that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A

8   class action solves this problem[.].").  Accordingly, a class action is superior to other available

9   methods for the fair and efficient adjudication of the controversy.

10      In securities claims, it is common for factual variations among shareholders related to stock

11  transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common

12  questions of fact related to misrepresentation claims "will predominate over the individual issues."

13  *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

14  **VI.     THE PLAN OF ALLOCATION IS FAIR AND REASONABLE**

15      Lead Counsel also seek preliminary approval of the Plan of Allocation of the Net Settlement

16  Fund.  *See* Notice, pp. 47-49.  Assessment of a plan of allocation in a class action under Rule 23 is

17  governed by the same standards of review applicable to the settlement as a whole – it must be fair

18  and reasonable.  *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992).  The

19  objective of a plan of allocation is to provide an equitable basis upon which to distribute the

20  settlement fund among eligible class members.  An allocation formula must be "rationally related

21  to the relative strengths and weakness of the case."  *Rosenburg*, 2007 WL 128232, at *5.

22      The Plan of Allocation provides an equitable basis to allocate the Net Settlement Fund

23  among all Class Members who submit an acceptable Proof of Claim and Release.  The Plan of

24  Allocation was developed by Lead Counsel and reflects the theories of causation and damages they

25  would have presented at trial.  The Plan of Allocation reflects an assessment of the damages that

26  Plaintiffs contend could have been recovered under the theories of liability asserted in the Action.

27  An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors,

28  including the number of valid claims filed by other Claimants and how many common shares of

1  Depomed the Claimant purchased, acquired, or sold and when that Claimant bought, acquired, or

2  sold the shares.  If a Claimant has an overall market gain with respect to his, her, or its overall

3  transactions in Depomed common shares or if the Claimant purchased shares during the Settlement

4  Class Period but did not hold any of those shares through at least one of the alleged corrective

5  disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered

6  would not have been caused by the revelation of the alleged fraud.  Lead Counsel believes that the

7  Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among

8  Class Members who submit valid claims.

9       The Apton Declaration also identifies the Investor Protection Trust as the proposed *cy pres*

10  recipient of any residual funds that may remain after one or more distribution of the Net Settlement

11  Fund to Authorized Claimants.  Here, 100% of the Net Settlement Fund will be distributed to

12  Authorized Claimants and, if any funds remain after initial distribution (for example, due to

13  uncashed or returned checks), further subsequent distributions to Authorized Claimants who would

14  receive at least $10.00 from such a re-distribution will be conducted as long as they are cost

15  effective.  The Investor Protection Trust is a non-sectarian, not-for-profit organization dedicated to

16  investor education and thus is an appropriate *cy pres* recipient.  *See* ¶¶50-52.  However, due to the

17  potential multiple rounds of distributions as long as it is cost effective, it is likely that only a small

18  amount of the funds will be directed to the Investor Protection Trust.  *See In re Zynga Inc. Sec.*

19  *Litig.,* 2015 WL 6471171, at *11 (N.D. Cal. Oct. 27, 2015).

20  **VII.**  **THE NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND THE PSLRA**

21       **A.**  **The Method of Notice is Adequate**

22       Rule 23(e) provides that a class action shall not be dismissed or compromised without the

23  approval of the court, and notice of the proposed dismissal or compromise shall be given to all

24  members of the class in such manner as the court directs.  Here, the Parties propose to mail, by first

25  class mail, individual copies of the Postcard Notice (Exhibit 4 to the Stipulation) to all Settlement

26  Class Members who can be identified with reasonable effort, as well as brokerage firms and other

27  nominees who regularly act as nominees for beneficial purchasers of stock.  Contemporaneously

28  with the mailing of the Postcard Notice, copies of the Notice (Exhibit A-1 to the Stipulation) and

the Claim Form (Exhibit A-2 to the Stipulation) will be posted on a website to be developed for the Settlement, from which copies of the Notice and Claim Form can be downloaded, and where claims can be submitted online.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form.  No more than ten (10) business days after mailing the Postcard Notice, the Summary Notice (Exhibit A-3 to the Stipulation) will also be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

Courts routinely find that these methods of notice are sufficient.  In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer class action).[6] Significantly, with an estimated mailing size of 15,000 (*see* Ex. 3 (Simmons Decl.), ¶ 16), a full printed Notice and Claim Form sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Plaintiffs respectfully submit that the combination of the mailed Postcard, published Summary Notice, and availability online of the Notice provides "the best notice that is practicable under the circumstances."[7]

**B.     The Content of the Notice Is Adequate**

As required by Rule 23(c)(2), the notice program will inform Settlement Class Members of the claims alleged in the Action, the terms of the Settlement, and their rights as Settlement Class Members to opt out or object to the Settlement, or otherwise object to the Plan of Allocation and/or

---

[6] *See also In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6-*7 (D. Md. May 19, 2010) (finding that a combination of postcard notice, summary notice, and a detailed notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements").

[7] Although it is not clear whether the notice provisions of the Class Action Fairness Act, 28 U.S.C. §1715 et seq. ("CAFA"), were intended to apply to class actions brought pursuant to the federal securities laws, Defendants will be providing CAFA notice.  To that end, Defendants shall serve upon the appropriate state official of each state in which a Settlement Class Member resides and the Attorney General of the United States a notice of the proposed Settlement in compliance with the requirements of the CAFA.

the proposed attorneys' fees and expenses. *See Stratton v. Glacier Ins. Adm'rs, Inc.*, 2007 WL 274423, at \*14 (E.D. Cal. Jan. 29, 2007) ("Notice is satisfactory in the context of settlement if it fairly apprises class members of the terms of the settlement in sufficient detail to afford them the opportunity to decide whether they should accept the benefits offered, opt out and pursue their own remedies, or object to the settlement."); *see also Churchill Village*, 361 F.3d at 575 ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").

The proposed notice program satisfies the requirements of Rule 23(c)(2) by setting forth in plain, easily understandable language: (i) the nature of the action (*see* Notice, pp. 5-7 ("What Is This Case About?"); Postcard Notice); (ii) the Settlement Class Definition (*see* Notice, p. 7 ("How Do I Know If I Am Affected By The Settlement? Who Is Included In The Settlement?"); Summary Notice, p. 1; Postcard Notice); (iii) a description of the claims at issue and the defenses to those claims (*see* Notice, pp. 5-7, 7-8 ("What Is This Case About?" and "What Are Lead Plaintiff's Reasons For The Settlement?")); (iv) the ability of Settlement Class Members to enter an appearance through counsel (*see* Notice, pp. 15-17 ("When And Where Will The Court Decide Whether To Approve The Settlement? Do I Have To Come To The Hearing? May I Speak At The Hearing If I Don't Like The Settlement?"); Postcard Notice); (v) the Settlement Class Member's ability to be excluded and the process for exclusion from the Settlement Class (*see* Notice, pp. 14-15 ("What If I Do Not Want To Be A Member Of The Settlement Class? How Do I Exclude Myself?"); Summary Notice, p. 2; Postcard Notice); (vi) the binding effect of a Class judgment (*see* Notice, pp. 8-10 ("How Are Settlement Class Members Affected By The Action And The Settlement?"); Summary Notice, p. 2; Postcard Notice).

Additionally, the notice program satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), by setting forth in plain, easily understandable language: (i) a cover page summarizing the information in the Notice (*see* Notice, pp. 1-3); (ii) a statement of plaintiff recovery, and the estimated recovery per damaged share (*see* Notice, pp. 2-3, 10-14 ("How Much Will My Payment Be?"); Postcard Notice); (iii) a statement of potential outcomes of the case (*see* Notice, p. 8 ("What Might Happen If There Were No Settlement?"); (iv) a statement of attorneys' fees or costs sought

(*see* Notice, pp. 2-3, 14 ("What Payment Are The Attorneys For The Settlement Class Seeking? How Will The Lawyers Be Paid?"); Postcard Notice); (v) identification of lawyers' representatives (*see* Notice, p. 17-18 ("Can I See The Court File? Whom Should I Contact If I Have Questions?"); Summary Notice, p. 2); (vi) reasons for settlement (*see* Notice, pp. 7-8 ("What Are Lead Plaintiffs' Reasons For The Settlement?")).

Further, the notice program will provide clear information about the time, date, and location of the Settlement Hearing and the process for submitting an objection to the Settlement or other relief to be requested by Plaintiffs and Lead Counsel.  *See* Notice, pp. 15-17 (response to question "When And Where Will The Court Decide Whether To Approve The Settlement? Do I Have To Come To The Hearing? May I Speak At The Hearing If I Don't Like The Settlement?"); Summary Notice, p. 2; Postcard Notice.  The Notice also states that the date of the hearing may change without further notice and advises Settlement Class Members to check the Settlement website or PACER to confirm that the date has not changed.  *See* Notice, p. 17-18.

## VIII.   THE INTENDED REQUEST FOR ATTORNEYS' FEES, LITIGATION EXPENSES, AND PLAINTIFF'S EXPENSES

As explained in the Postcard Notice and Notice, Lead Counsel intends to seek an award of attorneys' fees of up to 33.33% ($333,333.33) of the Settlement Amount and reimbursement of Litigation Expenses not to exceed $60,000, plus interest earned thereon.  Lead Counsel will provide much more detailed information in support of its application in its motion for attorneys' fees and expenses, to be filed with the Court 35 days before the final Settlement Hearing.  However, for purposes of the Court's preliminary review in connection with this motion for preliminary approval of the Settlement, Lead Counsel acknowledges that the maximum fee that Lead Counsel may request is above the "benchmark" often referenced by the courts in the Ninth Circuit.  *See, e.g.*, *Staton*, 327 F.3d at 968 ("This Circuit has established 25% of the common fund as a benchmark award for attorney fees.").  However, a benchmark is merely a benchmark; as the Ninth Circuit noted, "in most common fund cases, the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047.

Indeed, comparable fees greater than the "benchmark" have been granted routinely, especially in complex securities fraud cases such as this one.  *See*, *e.g*., *Mego*, 213 F.3d at 463 (affirming award of one-third of the total recovery); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373

(9th Cir. 1995) (a 33% award "for attorneys' fees is justified because of the complexity of the issues and the risks"); *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*18 (C.D. Cal. June 10, 2005) (awarding 33% fee in $27,783,000 settlement); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841, \*4 (E.D. Cal. Nov. 14, 2007) (approving a fee award of 33% of the common fund, and stating "'[e]mpirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery,'" *citing* 4 Newberg and Conte, NEWBERG ON CLASS ACTIONS § 14.6 (4th ed. 2007)).

## IX.    THE PROPOSED CLAIMS ADMINISTRATOR

Plaintiffs also request that the Court authorize the retention of Analytics Consulting, LLC ("Analytics") to serve as the Claims Administrator.  Analytics is a highly respected and experienced claims administrator, with experience in administrating many large and complex securities litigation matters.  Declaration of Richard W. Simmons at ¶1.

Analytics' fees for administration of the Settlement are charged on a per-claim basis and expenses will be billed separately (including expenses for printing and mailing the Postcard Notice, publishing the Summary Notice, establishing and maintaining the settlement website, and establishing and operating the toll-free telephone helpline).  *Id.* at ¶16.  Because the costs are highly dependent on how many Postcard Notices are ultimately mailed and how many Claims are ultimately received and processed, at this time only a rough estimate of the total Notice and Administration Costs can be provided.   At this time, Analytics estimates, based on its past experience with securities settlements of a similar size and companies with similar market capitalization and the length of the Settlement Class Period, that 15,000 Postcard Notices will be mailed and that Analytics will receive 3,000 claims.  Simmons Decl., ¶16.  Based on these estimates, Analytics estimates that the total Notice and Administration Costs for the Action will be approximately $50,000.  *Id.*  These costs are necessary in order to effectuate the Settlement and at approximately 5% of the total value Settlement, or $0.001 per damaged share, are reasonable in relation to the value of the Settlement.   ¶¶34-35.  If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.

## X.   PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval of the settlement hearing date, dates for mailing and publication of the notice program, and deadlines for submitting claims, opting out, or objecting to the Settlement. Plaintiffs respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order:

| EVENT | PROPOSED DATE |
| --- | --- |
| Deadline for mailing the Postcard Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Up to 20 business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶¶ 7b, 7c) |
| Deadline to publish the Summary Notice | Up to 30 business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶ 7d) |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 26) |
| Deadline for submitting objections and for requesting exclusion | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶ 13, 16) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 26) |
| Settlement Hearing. | 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order, ¶ 5) |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days after the Notice Date (Preliminary Approval Order, ¶ 10) |

## XI.   CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion and enter the Preliminary Approval Order.

Dated: August 13, 2021                         Respectfully submitted,

                                               **LEVI & KORSINSKY, LLP**

                                               s/ Adam M. Apton
                                               Adam M. Apton
                                               Adam C. McCall

388 Market Street, Suite 1300
San Francisco, CA 94111
Tel: (415) 373-1671
Fax: (212) 363-7171

-and-

Nicholas I. Porritt
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (212) 363-7171

*Counsel for Plaintiffs-Appellants*
*Mark Madrack, Manuele Scarpatetti,*
*Aurelio Scarpatetti, and Duy Vu and*
*Lead Counsel for the Class*