**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)
388 Market Street, Suite 1300
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Lead Counsel for Lead Plaintiffs*
*and the Class*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INCHEN HUANG, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ASSERTIO THERAPEUTICS, INC., ARTHUR JOSEPH HIGGINS, JAMES A. SCHOENECK, and AUGUST J. MORETTI,<br><br>Defendants. | Case No. 4:17-cv-04830-JST<br><br>**DECLARATION OF ADAM M. APTON IN SUPPORT OF PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**<br><br>Hearing Date:   October 7, 2021<br>Time:           2:00pm<br>Location:      Courtroom 6 – 2nd Floor<br>Judge:         Honorable Jon S. Tigar |

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST

I, Adam M. Apton, hereby declare and state as follows:

1.      I am an attorney duly licensed to practice in the State of California and before this Court.  I am a partner at Levi & Korsinsky, LLP ("L & K"), Court-appointed Lead Counsel for Lead Plaintiffs Aurelio Scarpatetti, Manuele Scarpatetti, Mark Madrack and Duy Vu (collectively, "Plaintiffs") and the proposed Settlement Class in the above-captioned action.  I have personal knowledge of the facts set forth herein and if called upon to testify, I could and would do so truthfully and accurately.  I submit this declaration, together with the attached exhibits, in support of Plaintiffs' Unopposed Motion for Preliminarily Approval of Settlement.

I.       HISTORY AND BACKGROUND OF THE LITIGATION

2.      On August 18, 2017, a class action complaint was filed in the United States District Court for the Northern District of California, styled *Huang et al. v. Depomed, Inc., et al.,* Case No. 3:17-CV-04830-JST (N.D. Cal.).[1]

3.      On December 8, 2017, the Court issued an Order (1) appointing Depomed Investor Group as Lead Plaintiffs for the Action; and (2) approving Plaintiff's selection of Levi & Korsinsky, LLP as Lead Counsel for the proposed plaintiff class.  ECF No. 52.

4.      On December 15, 2017, this Court issued an Order providing for Plaintiff to file an amended complaint, which would then function as the operative complaint.  ECF No. 58.   On February 6, 2018, Lead Plaintiffs filed an Amended Complaint (the "FAC"), asserting claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") against Depomed and the Individual Defendants. ECF No. 61.  On April 9, 2018, Defendants filed a Motion to Dismiss the FAC, ECF No. 66, which the Court granted on March 18, 2019. ECF No. 83.

5.      On May 2, 2019, Lead Plaintiffs filed a Second Amended Complaint (the "Second Amended Complaint" or "SAC'), asserting claims under Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated thereunder. ECF No. 87. On June 17, 2019, Defendants filed a

---

[1] Defendant Depomed, Inc. changed its name to Assertio Therapeutics, Inc. on August 14, 2018. Further, on August 21, 2019, Judge Tigar's courtroom location changed to the Ronald V. Dellums Federal Building and United States Courthouse, Courtroom 6, 2nd Floor, 1301 Clay Street, Oakland, CA 94612. Therefore, the caption of this action now reads *Huang et al. v. Assertio Therapeutics, Inc., et al.,* Case No. 4:17-CV-04830-JST (N.D. Cal.).

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                                   1

1  Motion to Dismiss the Second Amended Complaint, ECF No. 92, which the Court granted on March

2  11, 2020. ECF No. 110.

3        6.     On April 9, 2020, Plaintiffs timely filed a Notice of Appeal which was assigned to

4  the United States Court of Appeals for the Ninth Circuit, styled *Aurelio Scarpatetti, et al v. Assertio*

5  *Therapeutics, Inc., et al.*, Case No. 20-15707. ECF Nos. 112-113.

6        7.     As part of the appeals process, Plaintiffs and Defendants participated in the

7  Mediation Program of the Ninth Circuit Court of Appeals with Circuit Mediator Jonathan Westen.

8  This included multiple calls with the mediator and the exchange of settlement offers. These

9  mediation efforts were initially unsuccessful.

10        8.     On September 23, 2020, Plaintiffs filed their opening brief in the United States Court

11  of Appeals for the Ninth Circuit ECF No. 22. On October 23, 2020, Defendants filed their answering

12  brief ECF. No. 30. On December 14, 2020, Plaintiffs filed their Reply Brief. ECF. No. 36.

13        9.     An Oral Argument was initially scheduled for March 5, 2021 but on February 26,

14  2021, Appellees filed a Joint Motion to stay appellant proceedings stating that they were engaged

15  in advanced settlement negotiations and believed that the relief sought herein would facilitate

16  settlement while conserving judicial and party resources. ECF. No. 44.

17        10.    While the initial mediation efforts were unsuccessful, Plaintiffs and Defendants

18  continued to negotiate in good faith and came to an agreement in principle on February 26, 2021 to

19  settle and release all claims asserted against Defendants in the Action in return for a cash payment

20  by Depomed of $1,000,000 for the benefit of the Settlement Class, subject to certain terms and

21  conditions and the execution of a customary "long form" stipulation and agreement of settlement

22  and related papers.

23        11.    On July 30, 2021, the Parties executed the Stipulation and Agreement of Settlement

24  (the "Stipulation"), a true and correct copy of which is attached hereto as Exhibit 1.[2]  Annexed as

25  exhibits to the Stipulation are the following documents:

26

27  [2] All capitalized terms not otherwise defined herein, have the same meanings as set forth in the

28  Stipulation.

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                    2

| Exhibit | Description |
|---------|-------------|
| A | Preliminary Approval Order |
| A-1 | Notice |
| A-2 | Proof of Claim and Release Form |
| A-3 | Summary Notice |
| A-4 | Postcard Notice |
| B | Final Judgment and Order |

## II.      INFORMATION ABOUT THE SETTLEMENT

### A.      Settlement Class Definition

12.      Under the terms of the Settlement, the Parties agreed, subject to Court approval, to certification of a Settlement Class defined as: all persons who purchased or otherwise acquired common shares of Depomed from July 29, 2015 to August 7, 2017, inclusive.  Stipulation ¶1(oo).

13.      The only difference between the class initially proposed in the SAC (ECF No. 87) and the proposed Settlement Class is the Stipulation clarifies and specifies the list of persons and entities excluded from the proposed class because of their affiliation with Defendants, which is appropriate.

14.      The class proposed in the SAC did not list any specific persons and entities excluded from the class definition.

15.      Under the terms of the Settlement, those excluded from the Settlement Class are: Defendants and their respective successors and assigns; past and current executive officers and directors of Depomed, Inc. n/k/a Assertio Therapeutics Inc.; members of the Immediate Families of the Individual Defendants; the legal representatives, heirs, successors or assigns of the Individual Defendants; any entity in which any of the above excluded persons have or had a majority interest; and any person who validly requests exclusion from the Settlement Class.   Stipulation ¶1(oo).

### B.      The Releases

16.      Under the terms of the proposed Settlement, the Parties agreed that Plaintiffs and each of the other Settlement Class Members shall waive and release each and every Released Plaintiffs' Claim against Defendants and the other Defendants' Releasees in exchange for a payment by or on behalf of Defendants of $1,000,000 in cash, as set forth in greater detail in paragraphs 5-6

1  of the Stipulation.

2       a)     Released Plaintiffs' Claims are defined in the Stipulation (*see* Stipulation, ¶1(jj)) as

3  any and all claims, including Unknown Claims, that have been or could have been asserted by or on

4  behalf of any of Plaintiffs' Releasees, in any capacity, arising out of, based upon, relating indirectly

5  or directly to, or in connection with the purchase, sale, acquisition, disposition, or holding of

6  Depomed common shares purchased or otherwise acquired from July 29, 2015 to August 7, 2017,

7  inclusive, and the transactions, facts, events, matters, occurrences, acts, disclosures, statements,

8  representations, misrepresentations or omissions involved, set forth, referred to, or otherwise

9  related, directly or indirectly, to the allegations that were or could have been alleged in this Action

10 or the disclosures made in connection therewith (including the adequacy and completeness or such

11 disclosures). Released Plaintiffs' Claims do not include: (i) any claims relating to the enforcement

12 of the Settlement; and (ii) any claims of any person or entity who or which submits a valid and

13 timely request for exclusion that is accepted by the Court. For avoidance of doubt, the definition of

14 "Released Plaintiffs' Claims" does not include claims in any shareholder derivative action.

15      b)     Defendants' Releasees are defined in the Stipulation (*see* Stipulation, ¶1(l)) as

16 Defendants and each of a Defendant's past, present and future parents, subsidiaries and affiliates,

17 and their respective directors, officers, employees, partners, members, principals, agents,

18 underwriters, insurers, co-insurers, reinsurers, controlling shareholders, attorneys, accountants or

19 auditors, financial or investment advisors or consultants, banks or investment bankers, personal or

20 legal representatives, predecessors, successors, assigns, spouses, heirs, related or affiliated entities,

21 any entity in which a Defendant has a majority interest, any member of an Individual Defendant's

22 Immediate Family, or any trust of which any Individual Defendant is the settlor or which is for the

23 benefit of any Defendant and/or member(s) of his or her family.

24      17.    The scope of this release is reasonable as it is limited to claims that relate to the

25 purchase of Depomed common stock during the Class Period, ***and*** the facts that were or could have

26 been alleged in this Action.  Stipulation, ¶1(jj). The proposed Settlement does not release any claims

27 to enforce the Settlement, or claims of any person that excludes him/her/itself from the proposed

28 Settlement Class.

**C.**      **The Anticipated Recovery Under the Settlement**

18.      The $1,000,000 cash Settlement Amount amounts to an estimated average recovery of approximately $0.021 per damaged share before the deduction of Court-approved fees and expenses and costs of notice and claims administration, pursuant to the proposed Plan of Allocation.

19.      The costs of the notice and claims administration process, are estimated to be approximately $50,000. If Lead Counsel requests attorneys' fees of 33.33% of the Settlement Fund and reimbursement of the maximum amount of Litigation Expenses listed in the Notice, and the Court approves such request, the cost is estimated to be $0.009 per damaged share.  After deduction of these fees, costs, and expenses, the estimated average recovery per damaged share is approximately $0.012 per damaged share, pursuant to the proposed Plan of Allocation.

20.      If Plaintiffs had succeeded on appeal and successfully moved past the pleading stage, fully prevailed in each of their claims at summary judgment and after a jury trial, if the Court and jury awarded Plaintiffs damages—*i.e.*, Plaintiffs' best-case scenario—estimated total maximum damages would have been approximately $136.6 million.  Thus, the $1 million Settlement Amount represents approximately 0.7% of the recoverable damages potentially available in this Action.  This percentage of recovery is standard for cases with similar procedural histories.

21.      The factors bearing on the amount of the compromise include, among other things, the following:

a.      Lead Counsel's extensive investigation, factual discovery, and legal research of the claims asserted in this Action, which helped to evaluate, tweak, and sharpen the understanding of the strengths and weaknesses of these claims, including:

i.      In drafting of the FAC and during the PSLRA automatic discovery stay, Lead Counsel conducted an extensive factual investigation, which included: (a) a detailed review of (i) Depomed's Securities Exchange Commission ("SEC") filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Depomed; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) through a private

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                                          5

investigator, conducting numerous fact interviews with former employees and other third parties; (c) a review and analysis of other publicly available material and data; and (d) consulting with experts in the field of damages;

    ii.  In drafting the FAC and opposing the motion to dismiss the FAC filed by the Defendants, Lead Counsel further engaged in extensive legal research relating to the strengths and weaknesses of the claims asserted in this Action.

    iii.  In drafting of the SAC and during the PSLRA automatic discovery stay, Lead Counsel conducted an extensive factual investigation, which included: (a) a detailed review of (i) Depomed's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Depomed; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) through a private investigator, conducting numerous fact interviews with former employees and other third parties; (c) a review and analysis of other publicly available material and data; and (d) consulting with experts in the field of damages;

    iv.  In drafting the SAC and opposing the motion to dismiss the SAC filed by the Defendants, Lead Counsel further engaged in extensive legal research relating to the strengths and weaknesses of the claims asserted in this Action.

    b.  The Court granted Defendants' motions to dismiss;

    c.  Lead Counsel's full briefing of the case on appeal; and

    d.  Lead Counsel's ability to succeed on appeal.

  22.  In light of these risks, Lead Counsel believes that the percentage of recovery is reasonable and typical of other cases with similar procedural histories.

  **D.**  **The Proposed Plan of Allocation of the Settlement Fund**

  23.  The Plan of Allocation is detailed in the long-form Notice.  *See* Notice, pp. 47-49. The Notice will be posted online at www.DepomedSecuritiesLitigation.com, is downloadable, and will be mailed to Settlement Class Members upon request.

24.     Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the Settlement Fund (*i.e.*, the $1 million Settlement Amount plus any and all interest earned thereon) less any: (i) Taxes; (ii) Notice and Administration Costs; (iii) Litigation Expenses awarded by the Court; and (iv) attorneys' fees awarded by the Court.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.

25.     The Plan of Allocation provides for distribution of the Net Settlement Fund among Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on the timing of the purchases and sales of Depomed common stock and the decline that occurred in the price of the stock.

26.     An individual Claimant's recovery under the Plan of Allocation will depend on a number of factors, including the number of valid claims filed by other Claimants and how many shares of Depomed common stock the Claimant purchased, acquired, or sold during the Settlement Class Period.  If a Claimant purchased and sold shares prior to a corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero.  This is a widely accepted approach to the fair distribution of settlement funds in securities class action settlements.  Lead Counsel believes that the Plan of Allocation will result in a fair and equitable distribution of the Net Settlement Fund among Settlement Class Members who submit valid claims.

**E.     Estimate of Claims Rate**

27.     As explained more fully in the attached Declaration of Richard W. Simmons Regarding Notice Plan (attached hereto as Exhibit 3), Analytics Consulting, LLC ("Analytics" or the "Claims Administrator") estimates that, based on Depomed's trading history during the Class Period, approximately 15,000 Postcard Notices will be mailed to potential Settlement Class Members.  Simmons Decl., ¶16.

28.     Based on Analytics' significant experience in notification and claims administration in private securities litigation matters, Analytics expects to receive and process approximately 3,000 claims.  *Id.*

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                                          7

**F.      There Are No Reversions to the Defendants**

29.     Under the terms of the Stipulation, no portion of the Settlement Amount will revert to any defendant.  *See* Stipulation, ¶13.

## III.      SETTLEMENT ADMINISTRATION SELECTION PROCESS

30.     Lead Counsel retained Claims Administrator, Analytics, in order to provide (i) notice of the proposed Settlement to investors who make up the Settlement Class; and (ii) the administration of the claims process.

31.     Prior to retaining Analytics, Lead Counsel solicited requests for proposals for notice and administration of the Settlement from 2 experienced and respected settlement administrators. Lead Counsel carefully compared the submitted proposals, taking into consideration each administrator's estimated cost to administer the entire Settlement, the cost of the notice program and the cost of each processed Claim.  Lead Counsel also considered certain fixed costs associated with the administration of the Settlement, such as the design, implementation, and maintenance of a website dedicated to the Settlement.

32.     Pursuant to Lead Counsel's request, the potential settlement administrators proposed notifying the Settlement Class by mailing the Postcard Notice, publishing the Summary Notice and mailing the Notice upon request.  Each potential settlement administrator proposed utilizing paper checks to distribute valid settlement claims.

33.     In the past two years, Analytics administered the following settlements in which L & K was Lead Counsel: *In Re Regulus Therapeutics Inc. Securities Litigation.,* No. 3:17-CV-00182-BTM-RBB (S.D. Cal.), *Meyer v. United Microelectronics Corporation, et al.,* 1:19-cv-02304-VM (S.D.N.Y.), *and Roper v. SITO Mobile, Ltd*., Case No. 2:17-cv-01106-ES-MAH (D.N.J). Simmons Decl., ¶17.

34.     At this time, Analytics estimates that the Notice and Administration Costs, *i.e.*, the anticipated costs to administer the notice program, process Claims, and distribute the Net Settlement

Fund, among other tasks, will generate professional service fees and expenses of approximately $50,000.[3]  Simmons Decl., ¶16.

35.     These costs are necessary in order to provide notice of the Settlement in the manner generally accepted and properly administer the claims received in response. While the costs are approximately 5% of the total Settlement Amount, or approximately $0.001 per damaged share, they are a function of the number of shares traded during the eligibility period under the Plan of Allocation. If the Settlement is approved, the Notice and Administration Costs will be paid from the Settlement Fund.  Stipulation, ¶9.

## IV.    THE NOTICE PROGRAM

### A.    The Notice Distribution Plan

36.     In accordance with the proposed Preliminary Approval Order, attached as Exhibit A to the Stipulation filed herewith, Lead Counsel will cause the Claims Administrator to mail, by first-class mail, individual copies of the Postcard Notice to all Settlement Class Members who can be identified through reasonable effort, as well as brokerage firms and other nominees who regularly act as nominees for beneficial purchasers of stock.  As explained above, in consultation with the Class Administrator, Lead Counsel estimates that the Postcard mailing will be sent to approximately 15,000 potential Settlement Class Members.  *See* Simmons Decl. at ¶16.

37.     Contemporaneously with the mailing of the Postcard Notice, Lead Counsel will cause the Claims Administrator to post downloadable copies of the Notice and Claim Form online at www.DepomedSecuritiesLitigation.com.  Upon request, the Claims Administrator will also mail copies of the Notice and/or Claim Form to Settlement Class Members.

38.     Additionally, no more than ten (10) business days after the Postcard Notice is mailed, the Summary Notice will be transmitted once in Investor's Business Daily and to be transmitted once over the PR Newswire.

---

[3] Based on the estimate of 15,000 Postcard Notices mailed to potential Settlement Class Members and approximately 3,000 Claims will be processed.  *See* Simmons Decl., ¶16.

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                          9

39.     Lead Counsel believes that this method of notice provides Settlement Class Members with a full and fair opportunity to consider the proposed Settlement.  Significantly, with an estimated mailing to 15,000 shareholders, a full printed Notice and Claim Form (*i.e.*, a Notice Packet) sent to each potential Settlement Class Member would be cost prohibitive in light of the size of the Settlement Amount.  Thus, Lead Counsel respectfully submit that the combination of the mailed Postcard Notice, published Summary Notice, and online availability of the Notice provides the best notice practicable under the circumstances.

40.     Courts routinely find that these methods of notice are sufficient.  In particular, "[t]he use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts."  *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 n.3 (S.D.N.Y. 2014) (citing cases); *Barani v. Wells Fargo Bank, N.A.*, 2014 WL 1389329, at *10 (S.D. Cal. Apr. 9, 2014) (approving combination of postcard and online notice in consumer action); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 973 (N.D. Ill. 2011) ("The postcard notice was more than sufficient."); *In re Mut. Funds Inv. Litig.*, 2010 WL 2342413, at *6 (D. Md. May 19, 2010) (finding that a combination of post card notices, summary notices, and a long-form notice available online "is the best notice practical under the circumstances and allows Class Members a full and fair opportunity to consider the proposed Settlements.").

**B.     The Notice Contents Are Adequate**

41.     As more fully explained in the accompanying Memorandum of Points and Authorities in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement, the notice program satisfies the requirements of Rule 23(c)(2) and the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7), and does so in easily understandable language.

42.     In addition, the notice program includes the following information required by the Northern District of California's Procedural Guidance for Class Action Settlements ("Class Settlement Guidelines"): (i) the contact information for Lead Counsel to answer questions (*see* Notice, pp. 16, 17-18; Summary Notice, p. 2); (ii) the settlement website address (*see* Notice, pp. 5, 7, 10, 14, 17, 18; Summary Notice, p. 2, 3; Postcard Notice), which will be maintained by Analytics and which will contain links to the Notice, the motions for preliminary approval and final approval

of settlement; (iii) instructions on how to access the case docket via PACER or in person using the language suggested in item 3 of the preliminary approval Class Settlement Guidelines (*see* Notice, pp. 17-18).

43.     All blank placeholders found in the Notice, Claim Form, Summary Notice, and Postcard Notice will be filled in once the Court sets those dates and the documents are finalized prior to mailing and publication.

## V.     EXCLUSION REQUESTS

44.     The notice program instructs potential Settlement Class Members who wish to opt out from the Settlement Class to send such a request to the Claims Administrator so that it is received by the required deadline.   The notice program also clearly advises potential Settlement Class Members of the deadline to opt out, the method to opt out, and the consequences of opting out.  *See* Notice, pp. 14-15, Summary Notice, p. 2, Postcard Notice.

45.     These instructions set forth the information needed to be properly identified and to opt out of the Settlement.  *Id.*  The identification of Depomed common shares that each potential Settlement Class Member requesting exclusion purchased/acquired during the Class Period and held over a corrective disclosure, is required to identify if such person or entity would otherwise be a Settlement Class Member.

## VI.    OBJECTIONS

46.     The notice program instructs potential Settlement Class Members who wish to object to the Settlement, the proposed Plan of Allocation, or Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses how and when to do so.  *See* Notice, pp. 15-17, Summary Notice, p. 2, Postcard Notice.  The Notice instructs any potential objector to send their written objection to the Court, and makes clear that the Court can only approve or deny the Settlement.  Notice, pp. 15-17.  The instructions in the Notice substantively follow the suggested language in the Procedural Guidance for Class Action Settlements.  *Id.*

## VII.   ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

47.     For their efforts on behalf of the Settlement Class, Lead Counsel will be applying for a percentage of the common fund fee award to compensate them for the services they have rendered

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                        11

on behalf of the Settlement Class. Lead Counsel will be applying to the Court for an award of attorneys' fees in an amount not to exceed 33.33% of the $1 million dollar Settlement Fund (or up to $333,333.33 plus interest earned at the same rate as the Settlement Fund).

48.     Lead Counsel's total current lodestar is approximately $961,000.[4] The anticipated requested fee results in a negative multiplier of 0.34 (34%) to Lead Counsel's current total lodestar. Lead Counsel's current total lodestar also does not include, among other things, time that will be spent responding to Settlement Class Members inquiries, or work related to drafting the preliminary approval, final approval, and distribution motions.

49.     Lead Counsel will also apply for reimbursement of Litigation Expenses from the Settlement Fund in an amount not to exceed $60,000. These Litigation Expenses are paid or incurred in connection with the institution, prosecution, and resolution of the claims against Defendants.

## VIII.   *CY PRES* AWARD

50.     Lead Counsel proposes Investor Protection Trust as the *cy pres* recipient of any residual funds that may remain after one or more distributions of the Net Settlement Fund to Authorized Claimants.

51.     Here, 100% of the Net Settlement Fund will be distributed to Authorized Claimants, and if any funds remain after the initial distribution (for example, due to uncashed or returned checks), further distributions to Authorized Claimants who would receive at least $10.00 from such a re-distribution will be conducted as long as they are cost effective.

52.     Investor Protection Trust is a nonsectarian, not-for-profit organization dedicated to investor education and thus, is an appropriate *cy pres* recipient. In addition, the Parties and their counsel do not have any relationship with Investor Protection Trust other than designating it as a *cy pres* recipient in past settlements.

---

[4] The lodestar figure contains only the time of Lead Counsel attorneys and professional staff that billed more than ten (10) hours to the Action.

DECLARATION OF ADAM M. APTON
Case No. 4:17-cv-04830-JST                                                                           12

53.     However, due to the potential multiple rounds of distributions as long as it is cost effective, it is likely that only a small amount of the funds will be directed to Investor Protection Trust.

## IX.     TIMELINE

54.     In connection with preliminary approval of the Settlement, Plaintiffs are requesting that the Court establish: (i) dates by which notice of the Settlement will be distributed to Settlement Class Members; (ii) a date by which Settlement Class Members may exclude themselves from the Settlement; (iii) a date by which Settlement Class Members who wish to object to any aspect of Settlement, Plan of Allocation and/or request for attorneys' fees and reimbursement of Litigation Expenses must submit that objection; and (iv) a date on which the Court will hold the Settlement Hearing.

55.     The following is a proposed schedule which is also set forth in the proposed Preliminary Approval Order:

| EVENT | PROPOSED DATE |
|---|---|
| Deadline for mailing the Postcard Notice mailed to Settlement Class Members and posting the Notice and Claim Form on the Settlement website (the "Notice Date") | Up to 20 business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶¶ 7b, 7c) |
| Deadline to publish the Summary Notice | Up to 30 business days after entry of Preliminary Approval Order (Preliminary Approval Order, ¶ 7d) |
| Deadline for Plaintiffs to file papers in support of final approval and application for fees and expenses | 35 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 26) |
| Deadline for submitting objections and for requesting exclusion | 21 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶¶ 13, 16) |
| Deadline for filing reply papers | 7 calendar days prior to the Settlement Hearing (Preliminary Approval Order, ¶ 26) |
| Settlement Hearing. | 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter (Preliminary Approval Order, ¶ 5) |
| Deadline for submitting Claim Forms | Postmarked 120 calendar days after the Notice Date (Preliminary Approval Order, ¶ 10) |

56.     Under this proposed schedule, potential Settlement Class Members would have well over thirty-five (35) days to opt out or object to the Settlement and/or motion for attorneys' fees and reimbursement of Litigation Expenses.

## X.     CLASS ACTION FAIRNESS ACT (CAFA) NOTICE

57.     Defendants will be providing notice pursuant to CAFA.  Specifically Defendants shall serve upon the appropriate state official of each state in which a Settlement Class Member resides and the Attorney General of the United States a notice of the proof of services of such CAFA notices from Defendants.  Stipulation, ¶40.

## XI.     PAST DISTRIBUTIONS

58.     The Procedural Guidance for Class Action Settlements requests information regarding a previous distribution for at least one of L & K's past comparable class action settlements. The following chart represents the requested information for two other class action settlement for violations of the federal securities laws in which Lead Counsel served as Lead or Co-Lead Counsel:

| Matter | *In re Energy Recovery, Inc. Sec. Litig.*, No. 15-cv-265 (N.D. Cal.) | *In re Violin Memory* |
|---|---|---|
| **Total Settlement Fund** | $3,850,000 | $7,500,000 |
| **Method of Notice** | U.S. Mail, Internet, *Investor's Business Daily* | |
| **Total Number of Sent Notices**[5] | 17,994 | 11,175 |
| **The Number of Claim Forms Submitted** | 5,760 | 3,706 |
| **Percentage of Claims Forms Submitted** | 32% | 33% |
| **The Number of Acceptable (In Whole or In Part) Claim Forms Submitted** | 1,080 | 1,019 |

[5] Lead Counsel is unable to provide the total number of class members, because, as explained further in the Simmons Declaration ¶5, most securities are held under a "street name" system in which the vast majority of investors hold their securities through a brokerage firm, institution, or other third-party nominee and do not actually purchase and hold securities under their own names.

| | | |
|---|---|---|
| **Average Recovery per Claimant (based on number of Acceptable Claims)** | 67% | 12% |
| *Cy Pres* Recipient | N/A | Investor Protection Trust |
| **Amount Distributed to *Cy Pres* Recipient** | N/A | $11,072.91 |
| **Administration Costs** | $216,279 | $73,887 |
| **Attorneys' Fees** | $962,500 | $1,875,000 |
| **Litigation Expenses** | $48,080.34 | $121,778 |

I declare under the penalty of perjury under the laws of the United State of America that the foregoing is true and correct.  Executed on August 13, 2021.


s/ Adam M. Apton
Adam M. Apton