1

**LEVI & KORSINSKY, LLP**
Adam M. Apton (SBN 316506)

2

75 Broadway, Suite 202

3

San Francisco, CA 94111
Telephone: 415-373-1671

4

Facsimile: 212-363-7171
Email: aapton@zlk.com

5

6

*Attorneys for Lead Plaintiffs and the Class*

7

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

8

9

INCHEN HUANG, Individually and on
Behalf of All Others Similarly Situated,

Case No. 4:17-cv-04830-JST

10

**CLASS ACTION**

11

Plaintiff,

**PLAINTIFFS' NOTICE OF UNOPPOSED
MOTION FOR FINAL APPROVAL OF
SETTLEMENT; MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT
THEREOF**

12

v.

13

ASSERTIO THERAPEUTICS, INC.,
ARTHUR JOSEPH HIGGINS, JAMES
A. SCHOENECK, and AUGUST J.
MORETTI,

14

15

Defendants.

Hearing Date:  July 28, 2022
Time:          2:00pm
Location:      Zoom Webinar
Judge:         Honorable Jon S. Tigar

16

17

18

19

20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ...........................................................................1

II.     THE LITIGATION AND SETTLEMENT ........................................................2

    A.      The Litigation................................................................................................2

    B.      Lead Counsel's Investigation and the First Amended Complaint................3

    C.      The Second Amended Complaint and Dismissal with Prejudice..................4

    D.      The Appeal, Mediation Efforts, and Settlement Negotiations.....................4

III.    STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND *HANLON* .........5

IV.     ARGUMENT ...................................................................................................7

    A.      The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors ................7

        1.      Plaintiffs and Lead Counsel Adequately Represented the Settlement Class ..................................................................................................7

        2.      The Settlement Is The Result Of Arm's-Length Negotiations...................8

        3.      The Settlement Is An Excellent Result For the Settlement Class In Light of The Benefits of The Settlement And The Risks of Continued Litigation ............................................................................................9

        4.      The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval ................13

        5.      The Settlement Treats All Settlement Class Members Equitably Relative To Each Other ..................................................................15

        6.      The Positive Reaction Of The Settlement Class Supports Settlement Approval.........................................................................................15

        7.      The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval.................................................................................16

    B.      The Plan Of Allocation Is Fair And Reasonable .......................................19

    C.      The Settlement Class should Be Finally Certified .....................................21

    D.      The Notice Program Satisfies Rule 23 and Due Process............................21

    E.      The Court Should Withhold 10% of Plaintiffs' Fees until After the Post-Distribution Accounting. ..........................................................................21

V.      CONCLUSION ..............................................................................................22

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Aurelio Scarpatetti, et al v. Assertio Therapeutics, Inc., et al.*,
4
    Case No. 20-15707 ................................................................................................... 4, 5

5

*Christine Asia Co. v. Yun Ma*,
6
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............................................................ 14

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
8
    361 F.3d 566 (9th Cir. 2004) ..................................................................................... 10

9

*City of Detroit v. Grinnell Corp.*,
10
    495 F.2d 448 (2nd Cir. 1974) .................................................................................... 16

11

*D'Amato v. Deutsche Bank*,
12
    236 F.3d 78 (2d Cir. 2001) .......................................................................................... 8

13

*Garner v. State Farm Mut. Auto. Ins. Co.*,
14
    2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ........................................................... 6

15

*Hanlon v. Chrysler Corp.*,
16
    150 F.3d 1011 (9th Cir. 1998) ...................................................................... 1, 7, 9, 19

17

*Hefler v. Wells Fargo & Co.*,
18
    2018 WL 6619983 (N.D. Cal. 2018) .............................................................. 6, 16, 20

19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
20
    298 F.R.D. 171 (S.D.N.Y. 2014) ............................................................................. 12

21

*In re Alloy, Inc. Sec. Litig.*,
22
    2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ........................................................... 12

23

*In re American Apparel, Inc. Shareholder Litig.*,
24
    2014 WL 10212865 (C.D. Cal. July 28, 2014) ........................................................ 13

25

*In re Amgen Inc. Sec. Litig.*,
26
    2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .................................................... 8, 19

27

*In re Apple Computer Sec. Litig.*,
    1991 WL 238298 (N.D. Cal. Sept. 6, 1991) ............................................................ 12

28

*In re Atmel Corp. Derivative Litig.*,
    2010 WL 9525643 (N.D. Cal. Mar. 31, 2010) ................................................................ 9

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011) ......................................................................................... 9

*In re BP p.l.c. Sec. Litig.*,
    852 F. Supp. 2d 767 (S.D. Tex. 2012) ........................................................................ 11

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
    2016 WL 4474366 (N.D. Cal. Aug. 25, 2016) ............................................................ 15

*In re Extreme Networks, Inc. Sec. Litig.*,
    2019 WL 3290770 (N.D. Cal. July 22, 2019) .............................................................. 7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................................................. 12

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005)..................................................... 18, 21

*In re Illumina, Inc. Sec. Litig.*,
    2021 WL 1017295 (S.D. Cal. Mar. 17, 2021) ............................................................ 20

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007) ..................................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
    213 F.3d 463 (9th Cir. 2000)........................................................................... 14, 16, 17

*In re Netflix Privacy Litig.*,
    2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................................ 8

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... passim

*In re Polaroid ERISA Litig.*,
    240 F.R.D. 65 (S.D.N.Y. 2006)..................................................................................... 7

*In re Syncor ERISA Litig.*,
    516 F.3d 1095 (9th Cir. 2008)....................................................................................... 5

*In re Tyco Int'l, Ltd.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) .......................................................................... 10

*In re Wireless Facilities, Inc. Sec. Litig. II*,
   253 F.R.D. 607 (S.D. Cal. 2008) ............................................................................ 10

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
   364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................... 11

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ..................................................... 18, 20

*Inchen Huang v. Higgins*,
   2019 WL 1245136 (N.D. Cal. Mar. 18, 2019) ...................................................... 3, 10

*Inchen Huang v. Higgins*,
   443 F. Supp. 3d 1031 (N.D. Cal. 2020) ............................................................... 4, 10

*Knapp v. Art.com, Inc.*,
   283 F. Supp. 3d 823 (N.D. Cal. 2017) ..................................................................... 10

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................... 19

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................................................ 7

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   315 F.R.D. 226 (E.D. Mich. 2016) ............................................................................ 14

*Perks v. Activehours, Inc.*,
   2021 WL 1146038 (N.D. Cal. Mar. 25, 2021) ........................................................... 7

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ................................................................................. 12

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ....................................................................................... 8

*Schueneman v. Arena Pharmaceuticals, Inc.*,
   2020 WL 3129566 (S.D. Cal. June 12, 2020) ..................................................... 19, 20

*Shapiro v. JPMorgan Chase & Co.*,
   2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .......................................................... 16

*Tan Chao v. William*,
   2020 WL 763277 (2d Cir. Jan. 2, 2020) ................................................................... 14

*Vaccaro v. New Source Energy Partners L.P.*,
   2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)................................................................ 18

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976)........................................................................................ 5

*Vikram v. First Student Management, LLC*,
   2019 WL 1084169 (N.D. Cal. March 7, 2019) .......................................................... 16

*Vinh Nguyen v. Radient Pharm. Corp.*,
   2014 WL 1802293 (C.D. Cal. May 6, 2014)............................................................... 15

*Wong v. Arlo Technologies, Inc.*,
   2021 WL 1531171 (N.D. Cal. Apr. 19, 2021) ......................................................... 6, 9

*Yang v. Focus Media Holding Ltd.*,
   2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................................................. 15

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................................. 1

15 U.S.C. §78a .............................................................................................................. 3, 4

**Other Authorities**

Janeen McIntosh and Svetlana Starykh,
   *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25,
   2022)........................................................................................................................ 17

**Rules**

Fed. R. Civ. P. 23(b)(3) .................................................................................................. 21

Fed. R. Civ. P. 23(c) ...................................................................................................... 21

Fed. R. Civ. P. 23(e) ................................................................................................. passim

1

2

## NOTICE OF UNOPPOSED MOTION
## <u>FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>

3

4

**TO THE CLERK OF THE COURT AND ALL PARTIES AND THEIR RESPECTIVE COUNSEL OF RECORD:**

5

6

7

8

9

10

11

12

**PLEASE TAKE NOTICE** that, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Court's Amended Order Preliminarily Approving Settlement and Proving For Notice ("Preliminary Approval Order," ECF No. 122) on July 28, 2022, at 2:00 p.m., or as soon thereafter as the matter may be heard, Plaintiffs Aurelio Scarpatetti, Manuele Scarpatetti, Mark Madrack and Duy Vu (collectively, "Plaintiffs") will and hereby move the Honorable Jon S. Tigar, District Judge, via Zoom webinar (https://www.cand.uscourts.gov/zoom/), for entry of the [Proposed] Judgment Approving Class Action Settlement and the [Proposed] Order Approving the Plan of Allocation, both of which are submitted herewith.[1]

13

14

15

16

17

18

As set forth in the memorandum of points and authorities, in accordance with Federal Rule of Civil Procedure 23(e), the terms of the proposed Settlement are fair, reasonable, and adequate, notice of the proposed Settlement has been disseminated in accordance with the Preliminary Approval Order, and there have been no objection to the Settlement to date. Accordingly, Plaintiffs request the Court grant final approval of the proposed Settlement of this Action and the proposed Plan of Allocation.

19

20

21

22

Memorandum of Law, the Apton Declaration, the Declaration of Kari L. Schmidt Regarding Notice Administration ("Schmidt Decl."), the Declarations of Aurelio Scarpatetti, Manuele Scarpatetti, and Mark Madrack, the Stipulation, all prior pleadings and papers in this Action, and such additional information or argument as may be required by the Court.[2]

23

24

25

26

27

28

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement dated July 30, 2021 (ECF No. 117-2), or the concurrently filed Declaration of Adam M. Apton in Support of (I) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Apton Declaration"). Citations herein to "¶ __" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Apton Declaration.
[2] Defendants take no position with respect to this motion.

## STATEMENT OF ISSUES TO BE DECIDED

1.   Whether the Court should approve the proposed $1,000,000 million all cash, non-reversionary settlement as fair, reasonable, and adequate under Rule 23(e).

2.   Whether the Court should approve the Plan of Allocation as fair and reasonable.

3.   Whether the Court should finally certify the Action as a class action pursuant to Rules 23(a) and (b)(3) for settlement purposes only.

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.    PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of this Action that resolves all claims against Defendants in exchange for Defendants' cash payment of $1,000,000 (the "Settlement Amount"), and for approval of the Plan of Allocation. The terms of the Settlement are set forth in the Stipulation (ECF No. 117-1), which was preliminarily approved by the Court on March 22, 2022.  ECF No. 122.

The $1,000,0000 Settlement is procedurally fair, as it is the product of arm's-length negotiations helped facilitated by the Mediation Program of the Ninth Circuit Court of Appeals with Circuit Mediator Jonathan Westen, and was only achieved after years of hard-fought litigation against skilled defense counsel.  The Settlement is also substantively fair, reasonable, and adequate, as demonstrated by application of Rule 23 of the Federal Rules of Civil Procedure and the Ninth Circuit "*Hanlon* factors" for assessing class action settlements.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998).

Prior to reaching the Settlement, Lead Counsel developed a thorough understanding of both the strengths and the weaknesses underlying the claims in this Action, and meaningfully assessed the risks of establishing liability and damages, including the risk of prevailing on appeal under the heightened pleading standard and automatic stay of discovery imposed by the Private Securities Litigation Reform Act of 1995 (15 U.S.C. § 78u-4, (the "PSLRA")). ¶¶15-16, 34-45.  Indeed, as described in greater detail in the Apton Declaration, before agreeing to the Settlement, Lead Counsel, among other things: (i) conducted a comprehensive investigation prior to the filing two amended complaints (the operative pleading being the Second Amended Complaint); (ii) fully briefed the Defendants' motion to dismiss the each of the amended complaints; (iii) prepared for and argued the motions to dismiss; (iv) briefing an appeal to the Ninth Circuit Court of Appeals; (v) participating and the Mediation Program of the Ninth Circuit Court of Appeals; and (vi) negotiating the Settlement. ¶11. The Parties had multiple calls with Circuit Mediator Jonathan Westen. While the mediation efforts were initially unsuccessful, the Parties continued to negotiate in good faith and came to an agreement in principle on February 26, 2021.  ¶¶30-31.

Based on this substantial work and Lead Counsel's experience, Plaintiffs and Lead Counsel believe that the Settlement—which eliminates the significant costs and risks of continuing litigation and instead provides a fair and immediate cash recovery—is in the best interests of the Settlement Class. ¶12; Apton Decl., Exs. 2-4 (Declarations of Aurelio Scarpatetti, Manuele Scarpatetti, and Mark Madrack).

While the deadline to file an objection has not yet passed, the reaction of the Settlement Class also supports final approval. Approximately 31,936 copies of the Postcard Notice have been sent to potential Settlement Class Members and their nominees, and, to date, no objections or requests for exclusion have been received or entered on the docket. ¶82.

Finally, the Plan of Allocation reflects an assessment of the damages that Lead Plaintiff contends could have been recovered under the theories of liability and damages asserted in the Action. ¶¶59. The Plan of Allocation ties each participating Settlement Class Member's recovery to when the securities were acquired and sold, and is a fair and reasonable method for distributing the Net Settlement Fund. ¶¶59-64. The Plan of Allocation thus warrants approval.

For these reasons, as well as those set forth below and in the Apton Declaration, Lead Plaintiffs respectfully request that the Court grant final approval of the Settlement and Plan of Allocation and grant final certification of the Settlement Class for settlement purposes.

## II.    THE LITIGATION AND SETTLEMENT[3]

### A.    The Litigation

Plaintiffs assert claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Securities Exchange Act") against Depomed, and the Individual Defendants. Depomed traded on the NASDAQ under the ticker symbol "DEPO" during the Class Period. On August 18, 2017, a class action complaint was filed in the United States District Court for the Northern District of California. ECF No.1. On December 8, 2017, the Court

---

[3] The Apton Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a more fulsome description of, *inter alia*, the factual and procedural history of the Action (¶¶15-19); the nature of the claims asserted (¶¶20-26); the appeal and negotiations leading to the Settlement (¶¶27-33); and the risks and uncertainties of continued litigation (¶¶33-45).

1    issued an Order (1) appointing the Depomed Investor Group as Lead Plaintiffs for the Action; and
2    (2) approving Plaintiffs' selection of Levi & Korsinsky, LLP as Lead Counsel for the proposed
3    plaintiff class.  ECF No. 52.

4              **B.      Lead Counsel's Investigation and the First Amended Complaint**

5              Following Lead Counsel's appointment, counsel conducted a comprehensive investigation
6    into Defendants' allegedly wrongful acts, which included, among other things: (i) detailed review
7    of Depomed's Securities Exchange Commission ("SEC") filings, press releases, conference calls,
8    news reports, blog postings, and other public statements made by Defendants prior to, during, and
9    after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles
10   concerning Depomed; (iii) research reports by securities and financial analysts; (iv) economic
11   analyses of stock price movement and pricing data; (v) through a private investigator, conducting
12   numerous fact interviews with former employees and other third parties; and (vi) review and
13   analysis of other publicly available material and data.  As part of this investigation, Lead Counsel
14   also consulted with a damages expert.  ¶20.

15             On February 6, 2018 Lead Plaintiffs filed and served the 98-page First Amended Complaint.
16   ECF No. 61.  Among other things, the First Amended Complaint alleged that Defendants violated
17   the Securities Exchange Act, 15 U.S.C. §78a, *et seq*. In pertinent part, Plaintiffs alleged that
18   Defendants engaged in a wide-spread off-label marketing scheme, that Defendants made materially
19   false and misleading statements relating to that scheme, that Defendants made those statements with
20   scienter, and that the statements caused Plaintiffs and the Class losses. *Id*.

21             On April 9, 2018, Defendants filed and served a motion to dismiss the First Amended
22   Complaint.  ECF No. 66.  On June 8, 2018, Plaintiffs served their papers in opposition and, on July
23   23, 2018, Defendants served their reply papers.  ECF Nos. 68, 70.  On December 13, 2018, the Court
24   heard oral argument on Defendants' motions to dismiss.  ECF No. 77.  On March 18, 2019, the
25   Court entered an Order granting Defendants' motions to dismiss with leave to amend.  ECF No. 83;
26   *Inchen Huang v. Higgins*, 2019 WL 1245136, at *18 (N.D. Cal. Mar. 18, 2019) ("the Court grants
27   Defendants' motion to dismiss without prejudice. Plaintiffs may file an amended complaint within
28   21 days."). In pertinent part, the Court found that Plaintiffs failed to plead any part of its claim. *Id*.

### C.      The Second Amended Complaint and Dismissal with Prejudice

After the First Amended Complaint was dismissed, in drafting of the Second Amended Complaint and during the PSLRA automatic discovery stay, Lead Counsel conducted an extensive factual investigation, which included: (a) a detailed review of (i) Depomed's SEC filings, press releases, conference calls, news reports, blog postings, and other public statements made by Defendants prior to, during, and after the Settlement Class Period; (ii) public documents, reports, announcements, and news articles concerning Depomed; (iii) research reports by securities and financial analysts; and (iv) economic analyses of stock price movement and pricing data; (b) through a private investigator, conducting numerous fact interviews with former employees and other third parties; (c) a review and analysis of other publicly available material and data; and (d) consulting with experts in the field of damages. ¶23

On May 2, 2019, Lead Plaintiffs filed and served the 218-page Second Amended Complaint consisting of allegations from 10 former employees.  ECF No. 87.  Among other things, the Second Amended Complaint alleged that Defendants violated the Securities Exchange Act, 15 U.S.C. §78a, *et seq*. for the same reasons set forth in the First Amended Complaint. *Id*.

On June 17, 2019, Defendants filed and served a motion to dismiss the Second Amended Complaint.  ECF No. 92.  On August 1, 2019, Plaintiffs served their papers in opposition and, on August 30, 2019, Defendants served their reply papers.  ECF Nos. 94, 96.  On December 18, 2019, the Court heard oral argument on Defendants' motions to dismiss.  ECF No. 105.  On March 11, 2020, the Court entered an Order granting Defendants' motions to dismiss without leave to amend.  ECF No. 110; *Inchen Huang v. Higgins*, 443 F. Supp. 3d 1031, 1060 (N.D. Cal. 2020) ("the Court grants Defendants' motion to dismiss without leave to amend.").

### D.      The Appeal, Mediation Efforts, and Settlement Negotiations

On April 9, 2020, Plaintiffs timely filed a Notice of Appeal which was assigned to the United States Court of Appeals for the Ninth Circuit, styled *Aurelio Scarpatetti, et al v. Assertio Therapeutics, Inc., et al.*, Case No. 20-15707. ECF Nos. 112-113. As part of the appeals process, Plaintiffs and Defendants participated in the Mediation Program of the Ninth Circuit Court of Appeals with Circuit Mediator Jonathan Westen. ¶28. This included multiple calls with the mediator

and the exchange of settlement offers. *Id*. These mediation efforts were initially unsuccessful. *Id*.

On September 23, 2020, Plaintiffs filed their opening brief in the United States Court of Appeals for the Ninth Circuit. *Aurelio Scarpatetti, et al v. Assertio Therapeutics, Inc., et al.*, Case No. 20-15707 ECF No. 22. On October 23, 2020, Defendants filed their answering brief. *Id*. ECF. No. 30. On December 14, 2020, Plaintiffs filed their Reply Brief. *Id*. ECF No. 36.

Oral Argument was initially scheduled for March 5, 2021 but on February 26, 2021, Plaintiffs and Defendants came to an agreement in principle to settle and release all claims asserted against Defendants in the Action in return for a cash payment by Depomed of $1,000,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers. Accordingly, Plaintiffs and Defendants filed a Joint Motion to stay the appellate proceedings stating that they were engaged in advanced settlement negotiations and believed that the relief sought herein would facilitate settlement. *Id*. ECF No. 44.

Plaintiffs and Defendants continued to negotiate the terms of the Settlement and entered into the Stipulation of Settlement on July 30, 2021. ¶32; ECF No. 117.

## III.   STANDARDS FOR FINAL APPROVAL UNDER RULE 23(E) AND *HANLON*

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig*., 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("[T]he court must also be mindful of the Ninth Circuit's policy favoring settlement, particularly in class action law suits.")  Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation.  The settlement of complex cases also contributes to the conservation of scarce judicial resources.  *See, e.g., Garner v.*

*State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Avoiding such unnecessary and unwarranted expenditure of resources and time would benefit all Parties and the Court.").

Rule 23(e)(2)—which governs final approval—requires courts to consider several factors in determining whether a proposed settlement is fair, reasonable, and adequate, including whether:

> (A)   the class representatives and class counsel have adequately represented the class;
>
> (B)   the proposal was negotiated at arm's length;
>
> (C)   the relief provided for the class is adequate, taking into account:
>
> > (i)   the costs, risks, and delay of trial and appeal;
> >
> > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> >
> > (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
> >
> > (iv)   any agreement required to be identified under Rule 23(e)(3); and
>
> (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23(e) advisory committee notes to 2018 amendment, 324 F.R.D. 904, 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. 2018).

"In the Ninth Circuit, courts traditionally use a multi-factor balancing test to analyze whether a given settlement is fair, adequate and reasonable." *Wong v. Arlo Technologies, Inc.*, 2021 WL 1531171, at *5 (N.D. Cal. Apr. 19, 2021). "That test includes the following factors:

> [1] the strength of plaintiff's case; [2] the risk, expense, complexity, and likely duration of further litigation; [3] the risk of maintaining class action status throughout the trial; [4] the amount offered in settlement; [5] the extent of discovery completed, and the stage of the proceedings; [6] the experience and views of counsel; [7] the presence of a governmental participant; and [8] the reaction of the class members to the proposed settlement."

*Id.* (quoting *Hanlon*, 150 F.3d at 1026); *see also In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (N.D. Cal. July 22, 2019) (evaluating settlement based on factors set forth in Fed. R. Civ. P. 23(e)(2) and *Hanlon*); *Perks v. Activehours, Inc.*, 2021 WL 1146038, at *4 (N.D. Cal. Mar. 25, 2021) (same).

As explained below and in the Apton Declaration, application of each of the four factors specified in Rule 23(e)(2) and the relevant, non-duplicative *Hanlon* factors demonstrates that the Settlement warrants Court approval.

## IV.    ARGUMENT

### A.    The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Hanlon* Factors

#### 1.    Plaintiffs and Lead Counsel Adequately Represented the Settlement Class

Fed. R. Civ. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Plaintiffs and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement. Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Plaintiffs' interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."); *In re Polaroid ERISA Litig.*, 240 F.R.D. 65, 77 (S.D.N.Y. 2006) ("Where plaintiffs and class members share the common goal of maximizing recovery, there is no conflict of interest between the class representatives and other class members").

Plaintiffs also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases.  Lead Counsel, Levi & Korsinsky, has successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. Moreover, in this case, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, among other things, conducting two extensive investigation of the claims through a detailed review of all publicly available documents as well as numerous interviews with former employees and third parties, drafting two amended complaints, litigating and arguing two motions to dismiss, briefing an appeal, engaging in a hard-fought arm's-length mediation, and obtaining a $1,000,000 Settlement for the benefit of the Settlement Class following a dismissal order.  ¶¶20-33.

Accordingly, as the Court previously found in conditionally certifying the Settlement Class and appointing Plaintiffs as Class Representative and Levi & Korsinsky as Class Counsel, Plaintiffs and Class Counsel have adequately represented the Settlement Class.  *See* Amended Preliminary Approval Order ECF No. 122 at ¶¶2-3.  This factor supports final approval of the Settlement.

### 2.    The Settlement Is The Result Of Arm's-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness; that "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(B).  Courts in the Ninth Circuit "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013) ("Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable and experienced counsel").  Courts also recognize that the assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in ... settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *7 (C.D. Cal. Oct. 25, 2016).

1   Here, Lead Counsel engaged in rigorous settlement negotiations with counsel for the

2   Defendants in a process assisted by an experienced, well-respected 9th Circuit Mediator Jonathan

3   Westen. ¶28. This included multiple calls with the mediator and the exchange of settlement offers.

4   *Id*. Although these efforts were initially unsuccessful, the Parties continued to negotiate in good

5   faith and came to an agreement in principle on February 26, 2021 and on July 30, 2021, the Parties

6   executed the Stipulation and Agreement of Settlement (the "Stipulation"). ¶¶31-32; *see In re Atmel*

7   *Corp. Derivative Litig.*, 2010 WL 9525643, at *13 (N.D. Cal. Mar. 31, 2010) (the mediator's

8   participation "weighs considerably against any inference of a collusive settlement").

9   It is also important to note that the Settlement has none of the indicia of collusion identified

10   by the Ninth Circuit.  *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir.

11   2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement"

12   between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of

13   attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert

14   to defendants rather than be added to the class fund").  Accordingly, this factor militates in favor of

15   final approval.

16   **3.    The Settlement Is An Excellent Result For the Settlement Class In Light**

17   **of The Benefits of The Settlement And The Risks of Continued Litigation**

18   Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the

19   class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with

20   other relevant factors.  Fed. R. Civ. P. 23(e)(2)(C). Rule 23(e)(2)(C)(i) essentially incorporates three

21   of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense,

22   complexity, and likely duration of further litigation (second factor), and the risks of maintaining

23   class action status through the trial (third factor).  *Arlo*, 2021 WL 1531171, at *8 (citing *Hanlon*,

24   150 F.3d at 1026).  As discussed below, each of these factors supports the Settlement's approval.

25   **a) The Strength of Plaintiffs' Case and Risk Of Continued Litigation**

26   In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court

27   "must balance against the continuing risk of litigation, including the strengths and weaknesses of

28

1  plaintiff's case, against the benefits afforded to class members, including the immediacy and

2  certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

3      The risks of continued litigation here were considerable, and there was a high likelihood that

4  the Class would receive nothing. In considering the Settlement, Plaintiffs and Lead Counsel weighed

5  the risks inherent in succeeding on appeal and establishing all the elements of the claims, as well as

6  the likely further expense and duration of the Action.  *See Churchill Vill., L.L.C. v. Gen. Elec.*, 361

7  F.3d 566, 576 (9th Cir. 2004) (citing risk, expense, complexity, and likely duration of further

8  litigation as factors supporting final approval of settlement).  Here, the risks were extremely real as

9  the Court had already dismissed the First Amended Complaint and the Second Amended Complaint

10 in their entirety.  ECF Nos. 83, 110; *Inchen Huang v. Higgins*, 2019 WL 1245136 at * 11(N.D. Cal.

11 Mar. 18, 2019); *Huang*, 443 F. Supp. 3d at 1060.  Further, there was a high likelihood that Plaintiffs'

12 appeal would have been unsuccessful, as they had to succeed on every element of their claim,

13 leaving the Class with no recovery. Moreover, even if successful on appeal, there were also

14 substantial risks to success at class certification, summary judgment and trial.

15     Defendants adamantly deny any wrongdoing, and as in their motions to dismiss and response

16 to Plaintiffs' appeal, were prepared to make a multi-pronged defense against Plaintiffs' claims.

17 Although Plaintiffs and Lead Counsel believe that this case has substantial merit, they recognize the

18 significant risks of an appeal, and if successful, the cost and risk through a hearing on class

19 certification, completion of fact and expert discovery, summary judgment, trial, and subsequent

20 appeals, as well as the inherent difficulties and delays complex litigation like this entails.  *See, e.g.*,

21 *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 612 (S.D. Cal. 2008) (preliminarily

22 approving settlement where "[l]iability remains uncertain" as "it appears to the Court that plaintiffs

23 have a viable claim regarding the alleged securities fraud and Defendants have a viable defense

24 against such claims").  Likewise, the determination of damages, like the determination of liability,

25 is a complicated and uncertain process, involving conflicting expert testimony.  *In re Tyco Int'l,*

26 *Ltd.*, 535 F. Supp. 2d 249, 260-61 (D.N.H. 2007) ("even if the jury agreed to impose liability, the

27 trial would likely involve a confusing 'battle of the experts' over damages.").

28     Continued litigation would be uncertain, complex, costly, and lengthy.  Even assuming that

1   Plaintiffs' appeal was successful—and there was a significant risk that it would fail—depositions

2   would have had to be taken, experts would need to be designated and expert discovery completed,

3   Defendants' expected summary judgment motion(s) would have to be successfully briefed and

4   argued, and trials are innately expensive, risky, and uncertain.  Moreover, any judgment favorable

5   to the Settlement Class would be the subject of post-trial motions and appeal, which could prolong

6   the case for years with the ultimate outcome uncertain.  By contrast, the $1,000,000 Settlement

7   provides a favorable, immediately realizable recovery and eliminates all of the risk, delay, and

8   expense of continued litigation.  An evaluation of the benefits of settlement must be tempered by

9   recognizing that any compromise involves concessions on the part of all settling parties.  Indeed,

10  "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of

11  highest hopes.'"  *Officers for Justice*, 688 F.2d at 624 (citation omitted).

12       There is no better indication of the future risks Plaintiffs faced in continuing litigation than

13  that of the Court's dismissal.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F.

14  Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order

15  dismissing the shareholder … litigation to assess the risks involved."); *see also In re BP p.l.c. Sec.

16  Litig.*, 852 F. Supp. 2d 767, 820 (S.D. Tex. 2012) ("The Court is acutely aware that federal

17  legislation and authoritative precedents have created for plaintiffs in all securities actions formidable

18  challenges to successful pleading.").  The risks here were even more pronounced as the Court *twice*

19  dismissed Plaintiffs' complaints, the second with prejudice, and the only chance Plaintiffs had of

20  success was on appeal. As Plaintiffs had to prove every element on appeal, the risk that Plaintiffs

21  and the Class would receive nothing were very real.

22       On top of those risks, if Plaintiffs were successful on appeal and the case had advanced past

23  the motion to dismiss stage, a further escalation of risks would have followed.  For example, to

24  defeat a summary judgment motion and prevail at trial, Plaintiffs would have to prove by a

25  preponderance of the evidence, among other things, that: (i) Defendants engaged in a wide-spread

26  off-label marketing scheme; (ii) that Defendants made false and/or misleading statements about the

27  marketing scheme; (iii) the Individual Defendants had the requisite scienter in connection with such

28  statements and omissions; and (iv) the alleged putative class suffered damages as a result of such

1  false statements.  Although Plaintiffs and Lead Counsel believe that the case has merit, they

2  recognize establishing liability beyond the pleading stage is uncertain.  ¶¶34-45; *see also In re*

3  *Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (approving settlement

4  and noting that "the Court also recognizes that the issues of scienter and causation are complex and

5  difficult to establish at trial.").

6       Attendant to the above-discussed legal risks, continued litigation would be long, complex,

7  and costly.  *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 2010 WL 4537550, at *15 (S.D.N.Y.

8  Nov. 8, 2010) ("[s]ecurities class actions are generally complex and expensive to prosecute.").

9  Depositions would have to be taken, experts would need to be designated and expert discovery

10 completed, Defendants' expected motions for summary judgment would have to be successfully

11 briefed and argued, and trials are innately expensive, risky, and uncertain.  Any recovery that

12 shareholders might ultimately see would be diluted by the escalating costs accumulated in the

13 process.  *See In re Alloy, Inc. Sec. Litig.*, 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004)

14 ("[C]omplex security fraud issues were likely to be litigated aggressively, at substantial expense to

15 all parties.").

16      Moreover, any judgment favorable to the Settlement Class likely would be the subject of

17 post-trial motions and appeal, which could prolong the case for years with the ultimate outcome

18 uncertain.  *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991)

19 (overturning jury verdict for plaintiffs after extended trial); *Robbins v. Koger Props., Inc.*, 116 F.3d

20 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed

21 on appeal on loss causation grounds and judgment entered for defendant).

22      In sum, continued litigation would be risky and uncertain, and assuming the litigation were

23 even able to proceed past the pleading stage, it would be complex, costly, and lengthy.  By contrast,

24 the $1,000,000 Settlement provides a favorable, immediately realizable recovery and eliminates all

25 the risks of continued litigation.  *See In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171,

26 176 (S.D.N.Y. 2014) ("[t]he present value of a certain recovery at this time, compared to the slim

27 chance for a greater one down the road, supports approval of a settlement that eliminates the expense

28

1 and delay of continued litigation, as well as the significant risk that the Class could receive no

2 recovery").

3 **b) Risks Of Maintaining Class Action Status**

4 While Plaintiffs and Lead Counsel are confident the Class meets the requirements for

5 certification, a class had not yet been certified, and Plaintiffs are aware there is a risk the Court could

6 disagree. Furthermore, "[e]ven if the Court were to certify a class, there is no guarantee the

7 certification would survive through trial, as Defendants might have sought decertification or

8 modification of the class." *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal.

9 2008). "Because there was a risk that the court would not have certified a class in the first place had

10 the parties not settled, and a further risk that, even if it did, that class might later have been

11 decertified, this factor too weighs in favor of approving the settlement." *In re American Apparel,*

12 *Inc. Shareholder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014).

13 **4.    The Rule 23(e)(2)(C)(ii)-(iv) Factors Support Final Approval**

14 Under Rule 23(e)(2)(C)(ii)-(iv), courts also must consider whether the relief provided for

15 the class is adequate in light of "the effectiveness of any proposed method of distributing relief to

16 the class, including the method of processing class-member claims," "the terms of any proposed

17 award of attorneys' fees, including timing of payment," and "any agreement required to be identified

18 under Rule 23(e)(2)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the

19 Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement

20 is inadequate.

21 **Rule 23 (e)(2)(C)(ii):** Here, the method for processing Settlement Class Members' claims

22 and distributing the Net Settlement Fund to eligible claimants is well-established and effective.

23 Analytics Consulting, LLC ("Analytics"), the Court-approved Claims Administrator, will process

24 claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies

25 in their claims, or request the Court to review a denial of their claims, and, lastly, mail or wire

26 Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation),

27

28

after Court-approval.[4]  Claims processing like the method proposed here is standard in securities class action settlements as it has been long found to be effective, as well as necessary insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

**Rule 23(e)(2)(C)(iii):** The relief provided for the Settlement Class is also adequate when the terms of the proposed award of attorneys' fees is taken into account.  As detailed in the accompanying Fee Memorandum, a proposed attorneys' fee of 25% ($250,000) of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained.  The proposed attorneys' fee is also consistent with awards in similar complex class action cases.  *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 463 (9th Cir. 2000) (upheld fee award of one-third of $1.725 million settlement).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶18.

**Rule 23(e)(2)(C)(iv):** Finally, in accordance with Rules 23(e)(2)(C)(iv) and 23(e)(3), and as Plaintiffs noted in their preliminary approval papers, the Parties entered into a confidential agreement that establishes certain conditions pursuant to which Defendants may terminate the Settlement in the event that Settlement Class Members timely and validly requesting exclusion (or "opt out") from the Settlement Class meet the conditions set forth in Depomed's confidential supplemental agreement.  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."  *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020); *see also In re Carrier IQ, Inc., Consumer Privacy Litig.*,

---

[4] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶13.

2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) (granting final approval of class action settlement and observing that such "opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### 5.    The Settlement Treats All Settlement Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  Fed. R. Civ. P. 23(e)(2)(D).  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  The formula for determining each Claimant's Recognized Claim is based on an out-of-pocket measure of damages consistent with the alleged violations of the Securities Exchange Act, and takes into consideration when each Claimant purchased and/or sold shares of Depomed common stock. Plaintiffs will receive the same level of *pro rata* recovery, based on their Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members. ¶¶56-65. Accordingly, this factor favors final approval of the Settlement.  *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at *10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period."); *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014).

### 6.    The Positive Reaction Of The Settlement Class Supports Settlement Approval

The eighth *Hanlon* factor—the reaction of the Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object.  As required by Rules 23 (e)(4) & (5), the Settlement affords Settlement Class Members the opportunity to request exclusion from, or object to, the Settlement.  Schmidt Decl., Ex. B (Notice at p. 3).  Approximately 31,936 copies of the Postcard Notice have been distributed to potential Settlement Class Members and the Summary Notice was published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*, a national online newswire service.  *Id.* ¶¶8-9.  To date, no requests for exclusion have

been received, and no objections have been filed with the Court. *Id.* ¶¶12-13.[5]  The Settlement

Class's overwhelmingly positive reaction strongly supports final approval of the Settlement.

*Omnivision*, 559 F. Supp. 2d at 1043 ("the absence of a large number of objections to a proposed

class action settlement raises a strong presumption that the terms of a proposed class action

settlement are favorable to class members.").

> ### 7.     The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new

factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support final

approval.

**The Amount Offered In Settlement:** "To evaluate the adequacy of the settlement amount,

'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer."

*Wells Fargo*, 2018 WL 6619983, at *8.  "This determination requires evaluating the relative

strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for

relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v.

First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also

Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement

amount must be judged "not in comparison with the possible recovery in the best of all possible

worlds, but rather in light of the strengths and weaknesses of plaintiffs' case").  Indeed, "[t]here is

no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even

a thousandth part of a single percent of the potential recovery." *City of Detroit v. Grinnell Corp.,*

495 F.2d 448, 455 n.2 (2nd Cir. 1974); *see also In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459

(9th Cir. 2000) ("It is well-settled law that a cash settlement amounting to only a fraction of the

potential recovery does not *per se* render the settlement inadequate or unfair.").

---

[5] The deadline to request exclusion from, or to object to any aspect of, the Settlement is July 7, 2022; if any exclusions or objections are received after the date of this filing, they will be addressed on reply.

Here, Plaintiff's damages expert estimates that if Plaintiff had prevailed on the *already twice dismissed* case, and if (i) Plaintiffs were successful on all aspects of their appeal; (ii) the Court certified the same class period as the Settlement Class Period; (iii) Plaintiffs survived motion(s) for summary judgment on all elements and also convinced a jury that liability was proven; and (iv) the Court and jury accepted Plaintiffs' damages theory, including proof of loss causation as to each stock price drop dates alleged in this case—*i.e.*, Plaintiff's *best case scenario*—the total *maximum* damages would be approximately $136.6 million. ¶44. Of course, less than a complete victory on any aspect of these assumptions would decrease recoverable damages, and each element at issue (including loss causation) was strongly contested by Defendants. Under such a scenario, the $1,000,000 recovery represents approximately 0.7% of the estimated maximum damages potentially available in this Action. ¶9.

Especially in the light of these risks, the percentage of recovery is reasonable and well within the range of other securities class action settlements, especially given the procedural history and stage of the litigation. *See* Ex. 5 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2021 Full-Year Review* (NERA Jan. 25, 2022) at p. 24, Fig. 22 (median recovery in securities class actions in 2021 was approximately 1.8% of estimated damages).

Of course, Defendants would have continued to challenge all aspects of the case, and given the current procedural posture of the case, the prospect that Plaintiffs would have obtained *any* recovery was far from guaranteed. *See Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *6 (C.D. Cal. Oct. 10, 2019) ("In this case, continued litigation involved substantial risk for Plaintiffs. This Court has already granted three motions to dismiss, and a fourth is pending."); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) ("The Court has already dismissed the complaint and the amended complaint may fare no better. Something is clearly better than nothing."). Consequently, the amount recovered, when balanced against the risks of continued litigation, weighs strongly in favor of approval.

**<u>The Extent Of Discovery Completed And The Stage Of The Proceedings</u>**: "In the context of class action settlements, formal discovery is not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement." *In re Mego*

1    *Fin. Corp.*, 213 F.3d at 459 (9th Cir. 2000). "Instead, courts look for indications the parties carefully

2    investigated the claims before reaching a resolution." *In re: Volkswagen "Clean Diesel" Mktg.,*

3    *Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-14 (N.D. Cal. Oct. 25, 2016).

4         Here, Lead Counsel conducted an extensive investigation into the claims asserted in this

5    Action, which included a far-reaching review of publicly available information, significant work

6    with a private investigator who conducted numerous fact interviews with former employees and

7    other third parties, and consultation with experts in the fields of financial analysis, loss causation,

8    and damages. ¶¶20-26. Additionally, Lead Counsel drafted the First Amended Complaint, opposed

9    Defendants' motion to dismiss, filed a Second Amended Complaint, opposed Defendants' second

10   motion to dismiss,  filed an appellate brief, and participated in a mediation process, and reviewed

11   and analyzed the Court's decisions.  ¶¶27-33. As a result of these efforts, Plaintiffs and Lead Counsel

12   had a thorough understanding of the claims and defenses asserted in the Action, and the significant

13   risks to establishing liability and damages.  This understanding enabled Plaintiffs and Lead Counsel

14   to negotiate the Settlement intelligently and responsibly.  *See Vaccaro v. New Source Energy*

15   *Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not

16   proceed to formal discovery, Lead Plaintiff (i) reviewed vast amounts of publicly available

17   information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the .

18   . .  industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and

19   weaknesses of their claims and the adequacy of the settlement.").

20        **The Experience And Views Of Counsel:** "The recommendation of experienced counsel

21   carries significant weight in the court's determination of the reasonableness of the settlement."  *In*

22   *re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).  This makes sense, as

23   counsel is "most closely acquainted with the facts of the underlying litigation."  *Id.*

24        As discussed above, Lead Counsel has a thorough understanding of the merits and weakness

25   of the claims, as well as extensive prior experience litigating securities class action cases.  Under

26   such circumstances, Lead Counsel's conclusion that the Settlement is fair and reasonable and in the

27   best interests of the Settlement Class likewise supports the Settlement's approval.  *See In re*

28   *Omnivision*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel's recommendation

1  in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the

2  case and securities litigation in general).

3        **The Presence Of A Governmental Participant** "Because no government entities are

4  participants in this case, this factor is neutral." *Amgen*, 2016 WL 10571773, at *4.

5        As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a

6  finding that the Settlement is fair, reasonable, and adequate, or is neutral.  Final approval is,

7  therefore, appropriate.

8        **B.**      **The Plan Of Allocation Is Fair And Reasonable**

9        Plaintiffs also request final approval of the Plan of Allocation.  A plan of allocation in a class

10  action "is governed by the same standards of review applicable to approval of the settlement as a

11  whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045.  The

12  allocation formula used in a plan of allocation "need only have a reasonable, rational basis,

13  particularly if recommended by experienced and competent counsel." *Maley v. Del Global Tech.*

14  *Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002).  "A plan which fairly treats class members by

15  awarding a *pro rata* share to every Authorized Claimant, even as it sensibly makes interclass

16  distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members'

17  individual claims and the timing of purchases of the securities at issue should be approved as fair

18  and reasonable." *Schueneman v. Arena Pharmaceuticals, Inc.*, 2020 WL 3129566, at *7 (S.D. Cal.

19  June 12, 2020).

20        The Plan of Allocation, as detailed in ¶¶56-65 of the Apton Declaration, and set forth in the

21  Notice (Schmidt Decl., Ex. B at ¶¶47-59). Under the proposed Plan of Allocation, each Authorized

22  Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund, which is the

23  Settlement Fund (*i.e.*, the $1 million Settlement Amount plus any and all interest earned thereon)

24  less any: (i) Taxes; (ii) Notice and Administration Costs; (iii) Litigation Expenses awarded by the

25  Court; and (iv) attorneys' fees awarded by the Court.

26        The Plan of Allocation provides for distribution of the Net Settlement Fund among

27  Authorized Claimants on a *pro rata* basis based on a "Recognized Loss" formula that is based on

28  the timing of the purchases and sales of Depomed common stock and the decline that occurred in

1   the price of the stock. Schmidt Decl., Ex. B at ¶48. An individual Claimant's recovery under the

2   Plan of Allocation will depend on a number of factors, including the number of valid claims filed

3   by other Claimants and how many shares of Depomed common stock the Claimant purchased,

4   acquired, or sold during the Settlement Class Period. If a Claimant purchased and sold shares prior

5   to a corrective disclosure, the Claimant's recovery under the Plan of Allocation will be zero. Schmidt

6   Decl., Ex. B at ¶49. This is a widely accepted approach to the fair distribution of settlement funds

7   in securities class action settlements.

8        If any funds remain after an initial distribution to Authorized Claimants, as a result of

9   uncashed or returned checks or other reasons, subsequent distributions will be conducted as long as

10  they are cost effective. *Id.* at ¶57.  When it is determined that the re-distribution of funds remaining

11  in the Net Settlement Fund is not cost-effective, the remaining balance shall be contributed—subject

12  to Court approval—to the Investor Protection Trust.  *See* N.D. Cal. Pro. Guidance for Class Action

13  Settlements, at ¶8.  The Investor Protection Trust is a nonprofit organization devoted to investor

14  education and is an appropriate *cy pres* recipient because of the nature of the securities fraud claims

15  asserted in the Action.  Courts in this District and elsewhere have approved it as a *cy pres* recipient

16  in other similar actions.  *See Wells Fargo*, 2018 WL 6619983, at *2 ("the Court concludes that the

17  Investor Protection Trust's mission of educating investors makes it an appropriate cy pres

18  beneficiary."); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability*

19  *Litigation*, 2019 WL 2077847, at *4 (N.D. Cal. May 10, 2019) (Breyer, J.) ("Only if subsequent

20  distributions to eligible claimants are not cost effective will a donation to the *cy pres* recipient, the

21  Investor Protection Trust, be made."); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *9 (S.D.

22  Cal. Mar. 17, 2021) ("Should residual funds remain following a second distribution, or in the event

23  a second distribution is not economically feasible, the Parties shall distribute the remaining funds,

24  if any, to *cy pres* recipient, Investor Protection Trust, a 501(c)(3) organization located in Washington

25  D.C.").

26        Lead Counsel believes that the Plan of Allocation will result in a fair and equitable

27  distribution of the Settlement proceeds among Settlement Class Members who submit valid claims.

28  *See Arena*, 2020 WL 3129566, at *7 (approving substantially similar plan of allocation).  To date,

no objections to the Plan of Allocation have been filed on this Court's docket.  ¶82.  Accordingly, Plaintiffs respectfully request that the Court approve the proposed Plan of Allocation.  *See In re Heritage Bond Litig.*, 2005 WL 1594403, at *12 (C.D. Cal. June 10, 2005) ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate.").

### C.     The Settlement Class should Be Finally Certified

The Court's March 22, 2022 Amended  Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3).  *See* ECF No. 122 at ¶1. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Plaintiffs' Unopposed Motion for Preliminary Approval of Settlement (ECF No. 115 at 12-15), Plaintiffs respectfully request that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

### D.     The Notice Program Satisfies Rule 23 and Due Process

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  This Court has already found that the proposed notice program is adequate and sufficient (*see* Amended Preliminary Approval Order, ECF No. 122 at ¶¶7-9), and Lead Counsel and Analytics carried out the notice program as proposed.  *See* Schmidt Decl., ¶¶3-11.   The Settlement Class has, therefore, received "the best notice practicable under the circumstances."  Fed. R. Civ. P. 23(c)(2)(B).

### E.     The Court Should Withhold 10% of Plaintiffs' Fees until After the Post-Distribution Accounting.

Pursuant to the Preliminary Approval Order, "[t]he Court will typically withhold between 10% and 25% of the attorney's fees granted at final approval until after the post-distribution accounting has been filed" and [t]he final approval motion should specify what percentage class counsel believes it is appropriate to withhold and why." ECF No. 122 at 12. Here, Lead Counsel respectfully request that only 10% of their fees be withheld until after the post-distribution accounting.

Lead Counsel have litigated this case on a wholly contingent basis for over four years, and have expanded substantial resources litigating this Action. Lead Counsel's fee request, 25% of the Settlement fund, or $250,000, results in a negative multiplier of .23x when assessed against its lodestar of $1,079,506.25. ¶73. Lead Counsel has adequately and vigorously represented investors in this action for the over four years and will continue to do so until the settlement fund is closed. Therefore, Lead Counsel respectfully requests that the Court withhold 10% of their fee.

V.    **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the unopposed motion for final approval of the Settlement and approve the proposed Plan of Allocation.

Dated: June 23, 2022                              Respectfully submitted,

LEVI & KORSINSKY, LLP

 s/ Adam M. Apton
Adam M. Apton (SBN 316506)
Adam C. McCall (SBN 302130)
75 Broadway, Suite 202
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

 -and-

Nicholas I. Porritt
1101 30th Street NW, Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (212) 363-7171

*Counsel for Lead Plaintiffs and
the Class*